The People of the State of New York, Respondent, *v.* Leon Silver, Appellant.

First Department, April 12, 1960.

*Philip Segal* of counsel (*Samuel Segal,* attorney), for appellant.

*Arthur C. Muhlstock* of counsel (*Richard G. Denzer* with him on the brief; *Frank S. Hogan, District Attorney,* attorney), for respondent.

VALENTE, J. Appellant was convicted in the Court of General Sessions of the crime of grand larceny, first degree, arising from his participation — with an unapprehended confederate — in the theft of $1,800 worth of furs, taken from a showroom of a furrier on the eighth floor of a building on West 30th Street about 12:00 noon on a weekday. He was sentenced to the New York City Penitentiary for a period of one year.

Although the record establishes appellant's guilt beyond a reasonable doubt and no prejudicial error was committed requiring a new trial, a consideration of the entire case, as well as the presentence investigation report prepared by the Probation Department demonstrates that, while legally permissible (Penal Law, § 2182, subd. 1), the sentence was inappropriate and inapplicable. Under the provisions of section 543 of the Code of Criminal Procedure, this court may modify the judgment imposing the sentence; and the power to reduce sentences includes the power to find that a sentence or the execution of sentence should be suspended (*People* v. *Zuckerman,* 5 N Y 2d 401).

Appellant, for all of the 47 years of his life, has given every external evidence of personal and social adjustment in childhood, in adolescence and in adulthood. He has a stable and happy marital relationship and is the father of a 16-year-old son presently in high school. A hat blocker by trade and a member of the Millinery Hat Blockers Union, he was for 21 years steadily employed by one business concern. After that firm went out of business in 1953, appellant, while allegedly in poor health, was for a number of years regularly self-employed as a peddler. He was considered a responsible and respectable family man in his community until he became involved in his present difficulty.

Sentencing is one of the most difficult problems that confront a judge of a criminal court. After guilt has been established or acknowledged, when to be severe, when to be merciful, when to impose no sentence at all can cause many uneasy moments for the conscientious judge.

Basically, the primary object of our penal philosophy must be the protection and security of our community. For reasons of simple safety, the habitual criminal with his anti-social orientation and the incorrigible thug who resorts to violence to achieve his criminal designs must be uprooted and separated from the community. As a consequence, not only is protection afforded society but, rightly or wrongly, the law assumes that prompt and substantial punishment in such cases will deter others similarly inclined.

However, all offenders are not habitual criminals. Great care should therefore be exercised in imposing judgment for the very obvious reason that vast differences exist among individual offenders and their personal capacity for rehabilitation.

The prime aim of socialized justice, and inherent in its administration in our criminal courts today, is a dispassionate and conscientious evaluation of the unique aspects of the convicted offender's total personality, his intelligence, his character structure, his demonstrated ability to conform, his capacity to accept our social disciplines and limits, and his over-all stability. Such an inventory of his assets and liabilities is indispensable to a judicial determination in selected cases of whether accidental or situational offenders with promising potential can be aided to readjust to a normal life in the community without the disruptive, and sometimes destructive, effects of imprisonment.

In sum, a sentence must not only encompass the community's condemnation of the defendant's misconduct, but must also evaluate the possibilities of the rehabilitation of the defendant as a useful and responsible member of the community. The point need not be labored that it is, generally, the community's gain whenever a family can be kept together as an integrated and emotionally satisfying unit, with the head of the family meeting his responsibilities to it instead of unnecessarily marking time in jail.

It is much easier for the sentencing judge to send to jail for the maximum period the person convicted of a crime than it is to place him on probation or to defer sentence.* When to exercise this latter discretion, poses the greatest problem.

---

* The technique of deferring sentence for three to four months at a time has been successfully used where the court is uncertain as to whether a defendant would benefit by probationary treatment. In such an instance the defendant, with his consent, is released and allowed to take his place in society, but under the supervision and control of the Probation Department and for a trial period, to determine whether in actual practice he can utilize rehabilitation services. In this way he is placed on notice that his own behavior during the interval will be the deciding factor of prison versus probation. It sharpens his will to succeed and to find out for himself if he can buttress his promises of reform with the hard realities of accomplishment. From the point of view of the probation officer, this trial period is used to test the offender's basic desire to change and reveals as well whether he can use help constructively. The objective is to use authority to expose the offender to the disciplines of socially acceptable behavior under trained guidance to determine whether these new habits will prove so rewarding and satisfying that they will become his way of life when the court's authority is removed. Whatever the outcome, the court will have additional and persuasive data on which to base a proper disposition.

When a judge, after painstaking evaluation, concludes that there is a substantial basis for rehabilitation of a defendant, and places him on probation, the judge has made an individualized determination. True, probation involves a calculated risk. If the treatment is successful, the incident is closed. On the other hand, if not successful, and the recalcitrant defendant commits another crime, the judge may have cause to regret his misplaced confidence in the probability of the rehabilitation of the particular refractory offender. But the responsibility for sentencing remains solely his; and once having reached a considered conclusion, the sentence should be pronounced, recognizing, however, the inevitable risks involved in any human judgment.

The maximum sentence the defendant could have received herein was 5 to 10 years in a State prison (Penal Law, §§ 1294, 2189). In view of that possibility, the sentence of one year imposed gives a superficial impression of leniency. In fact, however, that is not the case. The imposition of a sentence for a definite term in the New York City Penitentiary is reserved for those who are "mentally or physically incapable of being substantially benefited by being committed to a correctional and reformatory institution" (Correction Law, § 203, subd. [e], par. 3; *People* v. *Thompson,* 251 N. Y. 428; *People ex rel. Gordon* v. *Ashworth,* 290 N. Y. 285; *People* v. *Gross,* 5 N Y 2d 131). By practice and custom, the definite sentence is given to incorrigible criminals and recidivists, as well as confirmed drug addicts and chronic alcoholics who need restraint. When so committed under a specific penitentiary sentence, the offender is released after serving his definite term, less time off for good behavior, without any parole supervision. The underlying theory that such an offender is not amenable to parole guidance is obviously not applicable in the instant case.

On the basis of the excellent prior adjustment of the defendant, and the other circumstances hereinbefore set forth, the interests of the defendant and of the community would have been better served had he been released upon probationary supervision for an indefinite period to allow an opportunity, under expert guidance and proper controls, to work out his problems in the realistic, normal day-to-day environment of the community.

The circumstances of the commission of the crime herein reflect stress and poor judgment, and leave the impression that it may have been an impulsive act which defendant erroneously imagined would magically solve his problems. Appellant had returned to his employment as a hat blocker before the imposi-

tion of sentence. In the interests of all concerned, he should be permitted to continue in this obviously fitting and rewarding activity which seems to have contributed so much to his previous stability. If sent to prison, he will find the problems of readjustment more intensified as an ex-convict and he will have to face them alone without the understanding, guidance and counseling of the trained probationary technicians in the Court of General Sessions who are well known for their analytical presentencing studies and striking successes in the field of rehabilitation. The impact and the consequences of a prison sentence that would be visited on his family are so obvious as to require no comment.

The judgment should therefore be modified on the law and in the exercise of discretion to the extent of suspending the execution of the sentence and placing the defendant on probation for the one-year period, and otherwise affirmed.

McNALLY, J. (dissenting). I dissent and vote to affirm. The crime of grand larceny in the first degree (Penal Law, § 1294) is punishable by imprisonment for a term up to 10 years (Penal Law, § 1295). The sentence of one year imposed on this defendant was a proper exercise of discretion on the part of the sentencing Judge.

BOTEIN, P. J., BREITEL and M. M. FRANK, JJ., concur with VALENTE, J.; McNALLY, J., dissents and votes to affirm in opinion.

Judgment modified on the law and in the exercise of discretion to the extent of suspending the execution of the sentence and placing the defendant on probation for the one-year period, and, as so modified, affirmed. Settle order on notice.