590 P.2d 470

**STATE of Arizona, Appellee,**

v.

**David Theodore SETY, Appellant.**

**STATE of Arizona, Appellant,**

v.

**David Theodore SETY, Appellee.**

**Nos. 1 CA–CR 2709, 1 CA–CR 2766.**

Court of Appeals of Arizona,
Division 1,
Department A.

Jan. 19, 1979.

OPINION

SCHROEDER, Judge.

In the morning hours of March 19, 1976, Donald Cue died as the result of injuries inflicted by the appellant, David Sety, during a bizarre series of confrontations at an isolated campground. Appellant was tried on an open charge of murder. During trial the court granted a directed verdict of acquittal as to first degree murder, and the jury convicted the appellant of second degree murder. On post trial motions, the trial court reduced the charge to voluntary manslaughter and sentenced Sety to serve not less than nine nor more than ten years in the Arizona State Prison.

Appellant Sety appeals from the judgment and sentence, and the State appeals from the trial court's reduction of the conviction from second degree murder to voluntary manslaughter. We affirm the conviction and modify the sentence.

## SUFFICIENCY OF THE EVIDENCE SUPPORTING VOLUNTARY MANSLAUGHTER AND SECOND DEGREE MURDER

Sety initially contends that the court should have directed a verdict of acquittal with respect to all charges. In its appeal the State urges that the trial court abused its discretion when, following the trial, it reduced the conviction from second degree murder to voluntary manslaughter. Resolution of both issues turns upon the unusual facts developed at trial.

On the day in question, the appellant was camping alone in an area below Bartlett Lake Dam in Maricopa County, Arizona. Sety testified that at approximately 6:00 a. m., the obviously intoxicated victim, Mr. Cue, awakened him and engaged him in a rambling discussion, primarily about weapons. Cue admired the appellant's hunting knife, asked Sety to sharpen Cue's own knife and then boasted of having killed eight people with that knife. Sety testified that he was shaken by this talk and that he crawled into his camper to get a pistol. Sety stated that as he emerged from the

John A. LaSota, Jr., Former Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Lynn Hamilton, Phoenix, for State of Arizona.

Derickson, Kemper & Henze by James Hamilton Kemper, Phoenix, Michael E. Benchoff, Phoenix, for David Theodore Sety.

camper Cue was pointing a gun directly at his head and laughing in a threatening manner.

Cue continued to talk about weapons, pulled a number of them from his car, and then began firing a large caliber rifle across the river. Thereafter, Cue loaded his weapon, repeatedly pointed it at Sety and joked about how afraid Sety was of him. Finally, Sety grabbed his own pistol and told Cue to "freeze." The armed Cue continued to approach, prompting Sety to fire two warning shots and to take Cue's rifle from him. Sety testified that Cue then reached into his jacket as if to take a gun from his belt. The appellant fired, striking Cue in the side, told Cue he was making a citizen's arrest and ordered him to begin walking toward the dam keeper's house. The two men then left the site near the camper, referred to at trial as site A, and proceeded toward the house. The physical evidence and Sety's testimony up to that point are not in dispute. The State does not contend that Sety was guilty of any culpable conduct prior to the time that the men left site A.

The two men then headed in the direction of the dam keeper's house, with Sety constantly prodding the resistant Cue. According to Sety's testimony, when Cue attempted to flee back toward the arsenal of weapons at site A, Sety fired first one or more warning shots and then two shots which struck Cue in the back. The victim fell on his back and lay motionless, apparently dead. As Sety approached him, however, Cue grabbed him and pulled him to the ground. Sety stated that he choked the victim into unconsciousness, went back to the camper to reload his pistol and then returned to where Cue was lying, designated during trial as site B. Sety then cut off part of the victim's clothing explaining at various times that he did so in order to make it harder for Cue to flee, to search for weapons or to determine the extent of the victim's wounds. Physical evidence found at site B, including the outer shirt worn by Cue, shell casings and evidence of a struggle corroborated Sety's version of the events.

At this point, however, the physical evidence and Sety's version of the incident diverge somewhat. Sety testified that as he again began prodding Cue in the direction of the dam keeper's house, Cue knocked the rifle from Sety's grasp and ran. Sety fired several pistol shots from what he claimed was a distance of roughly 75 feet. Cue fell and, by Sety's account, pretended to be dead. Sety testified, however, that as he looked more closely Cue reached up suddenly to grab him. As he jerked away, Sety claimed that his gun discharged striking Cue in the head. Certain at last that Cue was dead Sety continued to the dam keeper's house and reported the homicide to the Sheriff's Department.

Thus, according to Sety, the wounds which he inflicted upon Cue after they left site B were all either in self defense or in justified furtherance of a citizen's arrest. He argues that, based upon his testimony, he should have been acquitted of all charges.

■ The physical evidence, however, does not fully support Sety's version of what transpired after Cue and Sety left site B. Although Sety testified that Cue had bolted from scene B and had been shot at a distance of approximately 75 feet, Cue's undershirt, which he was wearing at the time the final shots were fired, showed evidence of powder burns indicating shots fired at a very close range. Shell casings were found fairly close to the corpse rather than at the greater distance indicated by Sety's testimony. The State also presented evidence of the trajectory of the bullets which could be interpreted as rebutting Sety's claim that he fired these shots from a distance at the fleeing Cue. The State's evidence suggests that Sety fired at least two final shots, in addition to the shot which struck Cue in the head, at very close range, and not, as he asserted, while Cue was in flight. The State thus presented evidence from which the jury could have concluded that the victim was shot repeatedly in circumstances which no longer justified deadly force. This evidence contradicted Sety's

proffered defenses. We conclude that the evidence presented was sufficient to find criminal culpability.

Having rejected the appellant's argument that he was entitled to a judgment of acquittal of all charges we now consider the State's contention that the trial court erred in reducing the conviction to voluntary manslaughter from second degree murder.

The presence of malice distinguishes murder from manslaughter under the statutes in effect at the time of this incident. A.R.S. § 13–451(A) provided that "murder is the unlawful killing of a human being with malice aforethought." A.R.S. § 13–455 defined manslaughter as "the unlawful killing of a human being without malice." Malice has been defined as the absence of justification, excuse or mitigation. *State v. Maloney*, 101 Ariz. 111, 416 P.2d 544 (1966); *Viliborghi v. State of Arizona*, 45 Ariz. 275, 43 P.2d 210 (1935). The trial court properly reduced the conviction to manslaughter only if the evidence was not sufficient to show an absence of justification, excuse or mitigation.

■ The State's principal argument in its appeal is that Sety's use of a deadly weapon supplies the element of malice. This is, however, only a presumption and may be rebutted by evidence of mitigation, justification or excuse sufficient to raise a reasonable doubt as to the existence of malice. *See State v. Maloney, supra*, and authorities cited therein. We find it difficult to conceive of a case in which this presumption is rebutted by stronger evidence of mitigation. In its briefs and at trial the State has conceded that Sety's initial use of force was fully justified and not culpable. There is no doubt that the provocation and terror which precipitated this killing were instigated by the intrusion of the seemingly crazed Cue into the pre-dawn solitude of the appellant's campground. In our view, this is a classic illustration of manslaughter resulting from mitigating circumstances.

. . . As a matter of juridical science, any circumstance of substantial mitigation should be sufficient to reduce to manslaughter a killing that would other-

wise be murder. Suppose, for example, the defendant thought he was in imminent danger of death and must kill to save himself from being murdered, and that he did kill for that reason. Suppose, also, there was no actual danger to his life at the moment, and the facts fell a little short of reasonable grounds for a belief in such danger. His homicide is not excused; but if the circumstances came rather close to such as would constitute an excuse his guilt is of manslaughter rather than murder, . . . Perkins, Criminal Law (1st ed. 1957), at 40. (footnote omitted).

■ The real factual issue presented in this case was whether the amount of force used by Sety was excessive under the circumstances. We believe that there was sufficient evidence for the jury to reject Sety's defenses and to convict him of manslaughter, but that the evidence did not support a murder conviction. At most, appellant was guilty of excessive retaliation constituting manslaughter rather than murder. *See People v. Robinson*, 14 Ill.App.3d 135, 302 N.E.2d 228 (1973), holding that the person acting in unreasonable fear of bodily harm is guilty of manslaughter; in accord, *People v. Chapman*, 49 Ill.App.3d 553, 7 Ill.Dec. 416, 364 N.E.2d 577 (1977); *Commonwealth v. Walley*, 466 Pa. 363, 353 A.2d 396 (1976).

Accordingly, we conclude that the trial court's reduction of the conviction from second degree murder to voluntary manslaughter was mandated by the evidence.

## COMPLIANCE WITH THE PROCEDURAL REQUIREMENTS OF RULE 20 IN REDUCING THE JUDGMENT

■ The State argues that the court's reduction of the conviction from second degree murder to voluntary manslaughter violated Rule 20(a) of the Arizona Rules of Criminal Procedure since it was entered nearly three months after the return of the verdict. That rule provides that a court's reduction of a verdict "be made with all

possible speed."[1] The State asserts that the reduction was done on the court's own motion.

The record reflects, however, that the court's reduction was not sua sponte but was done following Sety's renewal of his original motion for a judgment of acquittal. Pursuant to Rule 20(a) the appellant had filed the original motion on January 26, 1977, the day the State finished presenting its evidence. The motion was renewed at the close of the defendant's case, and again on February 3, 1977, the day following the jury's verdict.[2] The trial court waited until April 29, 1977, before acting on the motion. It may well be that a trial court should reduce a conviction on its own motion soon after the verdict, and it is true that Rule 20(a) requires all possible speed in deciding motions for acquittal presented *before* entry of the verdict. But, where as here, the defendant promptly presents a post-trial motion, the court may take the motion under advisement and the trial court's delay should not work to the irreparable prejudice of the defendant. *See State v. Tucker*, 26 Ariz.App. 376, 548 P.2d 1188 (1976).

## ADMISSIBILITY OF THE STATE'S MANNEQUIN EXHIBIT

■ Appellant Sety argues that the trial court erred in admitting into evidence a mannequin offered by the State to illustrate the trajectory of the bullets fired into the victim. Appellant argues that the evidence was inaccurate in that, according to the medical examiner's testimony, the build of the mannequin was somewhat different than that of the victim and the holes in the mannequin's body depicting the bullet holes in the victim's body were a shade off a true correspondence.

We find that the introduction of the mannequin was not error. It is within the discretion of the trial court to judge whether an exhibit such as a mannequin is substantially accurate and of assistance to the jury. We cannot agree that the discrepancy was such that the appellant was prejudiced. *See Slow Development Co. v. Coulter*, 88 Ariz. 122, 353 P.2d 890 (1960); *People v. Robillard*, 55 Cal.2d 88, 10 Cal.Rptr. 167, 358 P.2d 295 (1960), *cert. denied* 365 U.S. 886, 81 S.Ct. 1043, 6 L.Ed.2d 199 (1961); McCormick, Law of Evidence, § 213 (2d ed. 1972).

## EXCESSIVENESS OF SENTENCE

Although the trial court reduced the judgment from second degree murder to manslaughter, it sentenced the appellant to not less than nine nor more than ten years, to date from December 30, 1976. Ten years is the maximum sentence for the crime of voluntary manslaughter. Appellant contends that the sentence is excessive and asks this Court to reduce it pursuant to A.R.S. § 13–1717.

■ Our courts have consistently held that the discretion of the trial court will be upheld in sentencing unless there is clear abuse. *State v. Reid*, 114 Ariz. 16, 559 P.2d 136 (1976), *cert. denied* 431 U.S. 921, 97 S.Ct. 2191, 53 L.Ed.2d 234 (1977); *State v. Toney*, 113 Ariz. 404, 555 P.2d 650 (1976); *State v. Malory*, 113 Ariz. 480, 557 P.2d 165 (1976). In determining whether a sentence is excessive, we must consider both the circumstances of the offense charged and the moral character of the defendant. *State v. Killian*, 91 Ariz. 140, 370 P.2d 287 (1962).

1.  Rule 20(a) provides:
    a.  Before Verdict. On motion of a defendant or on its own initiative, the court shall enter a judgment of acquittal of one or more offenses charged in an indictment, information or complaint after the evidence on either side is closed, if there is no substantial evidence to warrant a conviction. The court's decision on a defendant's motion shall not be reserved, but shall be made with all possible speed.

2.  The February 3 motion expressly claimed "the Court erred in failing to grant defendant's motion for directed verdict of acquittal as to second degree murder and voluntary manslaughter." The provisions of Rule 20(b), relating to motions after the verdict has been returned, were followed in this case, and the provision of Rule 20(a), relating to motions made during the trial, is not applicable. There was no error.

The circumstances under which this crime was committed were highly unusual, with substantial mitigating factors introduced at trial. The presentence report indicates that the appellant was 33 years of age, without a substantial criminal background and from a stable and supportive family structure. Prior to this incident, his life had been free of any episodes of violent behavior.

A psychiatrist appointed by the trial court to examine the appellant described him as "a hard working industrious member of the community who tends to avoid people and stay by himself." The psychiatrist found him to be a "friendly, cooperative, relevant and coherent . . . male of estimated high average intelligence" and concluded that he was neither dangerous nor "a criminal type individual."

Evidence of the victim's, Cue's, belligerent and violent disposition was presented at the mitigation hearing but was not before the jury. Cue's girlfriend testified that he had fired a gun at her on one occasion, that he was belligerent and violent when he was intoxicated and that he liked to frighten people by telling them that he had committed several killings.

Also at the mitigation hearing, another witness recalled a frightening encounter that he and his family had had with Cue while camping. He testified that Cue was intoxicated, waved a pistol about and so frightened the witness and his family that they moved to a new camping area. Cue then followed them to that campsite the following day, and again engaged in threatening, irrational behavior. The witness testified that he was so terrified he considered smashing Cue's head with a rock, and eventually fled from the site, leaving the camping equipment behind.

Finally, the Maricopa County Sheriff's deputy responsible for the investigation of this matter stated that a lengthy prison term would, in his opinion, be unjustified, and that it would not have been unreasonable for the appellant to receive a sentence of one year or less in county jail.

 In short, while the record supports the conviction of manslaughter, the entire record also reflects compelling mitigating circumstances. Imposition of the maximum term was not reasonable in this case, and appellant has already been incarcerated for approximately two years. Therefore, pursuant to the authority of A.R.S. § 13–1717(B), the sentence in this case is reduced to the time which the appellant has already served.

Conviction affirmed and sentence modified.

JACOBSON, J., and DONOFRIO, Acting P. J., concurring.