**Steven WIGHTMAN, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**No. 3992.**

Supreme Court of Alaska.

Feb. 22, 1980.

Gail Roy Fraties, Anchorage, for appellant.

John A. Scukanec, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

RABINOWITZ, Chief Justice.

Steven Wightman brings this sentence appeal. Appellant pled guilty to four counts of robbery and use of firearms during the commission of a crime[1] and one count of attempted robbery.[2] Superior Court Judge Peter J. Kalamarides sentenced him to serve fifteen years for each of the four armed robbery counts and seven and one-half years for the attempted robbery count, with all sentences to run concurrently.

On the evening of September 5, 1977, Steven Wightman was driving around the Anchorage area in a stolen Subaru automobile with several other persons in the car, including the two co-defendants in this case, John and David Ferguson. At some point during the evening there was a discussion concerning robbing a liquor store or

1. AS 11.15.240 provides:

*Robbery.* A person who, by force or violence, or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

AS 11.15.295 reads:

*Use of firearms during the commission of certain crimes.* A person who uses or carries a firearm during the commission of a robbery, assault, murder, rape, burglary, or kidnapping is guilty of a felony and upon conviction for a first offense is punishable by imprisonment for not less than 10 years. Upon conviction for a second or subsequent offense in violation of this section, the offender shall be imprisoned for not less than 25 years.

2. The attempted robbery conviction was also under AS 11.15.240. *See* note 1 *supra*.

bar and the Pole-Lock Bar outside of Palmer was selected for the crime. Having reached this decision, the group returned to the Fort Richardson Military Reservation near Eagle River where they had been camping. The other individuals all exited the car, and Wightman and the Fergusons gathered up two shotguns, which had been found in the Subaru when it was stolen, and approximately thirty shotgun shells.

Wightman then drove with his two companions back to Palmer.[3] Wearing a ski mask, David Ferguson entered the front door to the bar wielding a shotgun which he pointed at the bartender. Wightman, unarmed but also wearing a ski mask, followed immediately behind him and proceeded directly to the cash register. At approximately the same time, John Ferguson entered the bar through a side door, armed with a shotgun. John Ferguson told the customers in the bar that the shotgun was loaded and that he wanted their wallets and purses.[4] After the wallets and purses were collected, the customers were ordered to lie on the floor, and the bartender was ordered to accompany John Ferguson outside. Once outside, he was ordered to run away from the building. Wightman and the Fergusons then returned to the Subaru and drove toward Anchorage. The Alaska State Troopers were notified of the robbery and subsequently spotted the Subaru near Eagle River. Two patrol cars gave chase but ceased pursuit after two shotgun blasts were fired from the Subaru at the patrol vehicles. John Ferguson later admitted firing both shots at the state troopers.[5]

Within two days, Wightman was apprehended, and he subsequently entered the aforementioned guilty pleas and received a fifteen-year sentence on these multiple counts. In his appeal, Wightman contends that mitigating circumstances require modification of his sentence, that he is not a "worst offender," and that the goals of penal administration would be served by a reduction or modification of the sentence he received. After reviewing the record in this case, we find Wightman's arguments that the superior court's sentence should be modified persuasive.

In the main, we have concluded that the superior court correctly applied the criteria developed in our prior decisions;[6] and that the superior court properly evaluated the various relevant sentencing objectives.[7] Our only disagreement with the sentences which were imposed is that, based on our study of the record, we are of the opinion that an appropriate portion of the fifteen and concurrent seven and one-half year sentences should be suspended and Wightman placed on probation.

In reaching these conclusions, we have deliberately set forth in some detail the circumstances leading to the commission of the crimes, the crimes themselves, and the forceful and extremely dangerous evasive maneuvers which were taken by Wightman and his companions to avoid apprehension. Given these factors, as well as other relevant evidence which was present-

3. On the way to the Pole-Lock Bar, one of the shotguns was loaded. The other shotgun was already loaded at the time it was taken from their camp. Wightman and his companions delayed their arrival at the Pole-Lock Bar because they had test fired one of the shotguns (to ascertain if it was loaded) in the vicinity of the tavern.

The facts concerning the crimes in question are also set forth in *Ferguson v. State*, 590 P.2d 43 (Alaska 1979).

4. At one point Ferguson jammed the shotgun into the back of one of the customers, Jody Smith, when he thought Smith delayed too long in producing his wallet.

5. The police reports state that Wightman (the driver) urged John Ferguson to fire the shots. After their vehicles had been struck by the shotgun blasts, both troopers decided not to pursue the Subaru since it had merged with other traffic.

6. *See, e. g., Ripley v. State*, 590 P.2d 48 (Alaska 1979); *Johnson v. State*, 580 P.2d 700 (Alaska 1978); *Collins v. State*, 574 P.2d 1278 (Alaska 1978); *Parks v. State*, 571 P.2d 1003 (Alaska 1977); *Cleary v. State*, 548 P.2d 952 (Alaska 1976); *State v. Chaney*, 477 P.2d 441 (Alaska 1970).

7. The "clearly mistaken" test for review of sentences was adopted in *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

ed to the superior court prior to its imposition of sentence,[8] we think that Wightman comes close to being within a worst type of offender classification.[9]

We have established that maximum prison sentences should not be imposed without a foundation for characterizing a defendant as the worst type of offender within the relevant group, here those persons committing armed robbery. *E. g., Fox v. State*, 569 P.2d 1335 (Alaska 1977). However, armed robbery is among the most serious offenses, *see Benefield v. State*, 559 P.2d 91, 98 (Alaska 1977); *Cleary v. State*, 548 P.2d 952 (Alaska 1976), *opinion on remand*, 564 P.2d 374 (Alaska 1977), and the crimes we are concerned with here involved four separate counts of armed robbery and one separate count of attempted robbery. The extreme peril and danger of harm to others created by Wightman's actions during the robberies as well as the obvious dangerousness of the evasive actions employed by Wightman in order to avoid apprehension furnish a sufficient basis for placement of Wightman near the top strata of offenders committing armed robbery.

Our prior decisions establish that it is within the discretion of the sentencing court to determine the priority and relationship of the sentencing goals which were articulated in *State v. Chaney*, 477 P.2d 441 (Alaska 1970).[10] At the sentencing hearing, Judge Kalamarides stated, in part:

> [I]n considering all of the matters set out by the supreme court, I do not find that your rehabilitation requirements are the primary and necessary directives to this court. I find that you are one of the most dangerous offenders because of your participation in this matter and that a deterrent to you and to others who might have the same ideas takes precedence over the theory of rehabilitation and although rehabilitation still remains I feel that community condemnation necessarily takes priority in this matter. As I said before, this was one of the most horrendous crimes in this area and did in fact shock the community. You must be taught—and others like you—that the community will not stand for this type of activity.

Nevertheless, review of the record also discloses the existence of mitigating circumstances. Other than a reckless driving conviction, Wightman has no prior criminal record. At the time of sentencing, Wightman was twenty-one years old. The psychiatric evaluation of Wightman concluded, in part, that his personality was "immature." The author of Wightman's psychological evaluation concluded that Wightman was a greater danger to himself than society, and that psychological treatment as well as vocational training was indicated. From the record, it is clear that Wightman's troubles started when the Marine Corps and the United States Government would not recognize his civil ceremony marriage to a Philippine citizen. In the words of the psychological report, "This marriage has created a monster . . . for Wightman." During the months preceding the commission of the crimes in question, Wightman became progressively more frustrated by his lack of success in solving his tangled marital affairs.

8. Wightman had no record of prior criminal convictions other than traffic citations at the times the crimes in question were perpetrated. At the time of sentencing, he was AWOL from the Marine Corps and faced pending charges for use of marijuana and unauthorized absence by military authorities.

9. Relevant factors in making a determination whether a criminal defendant is the "worst type of offender" include: "prior criminal convictions, age, military records, employment history, drug or alcohol addiction, presentence report evaluations and recommendations, and behavior which has been considered to demonstrate an antisocial nature or dangerous propensities which pose a clear risk to the public." *State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975). *See also Bordewich v. State*, 569 P.2d 184 (Alaska 1977); *Burleson v. State*, 543 P.2d 1195 (Alaska 1975).

10. *Morgan v. State*, 582 P.2d 1017, 1030 (Alaska 1978); *Griffith v. State*, 578 P.2d 578 (Alaska 1978); *Cleary v. State*, 548 P.2d 952 (Alaska 1976), *opinion on remand*, 564 P.2d 374 (Alaska 1977); *Asitonia v. State*, 508 P.2d 1023 (Alaska 1973). *But see Good v. State*, 590 P.2d 420 (Alaska 1979).

Given the foregoing and the additional facts that the pre-plea report indicates the presence of factors which indicate the likelihood of rehabilitation, we conclude that five years of the fifteen year and seven and one-half years concurrent sentences should be suspended upon condition of probation.

Affirmed in part, Modified in part.

BURKE, Justice, with whom MATTHEWS, Justice, joins, dissenting.

I respectfully dissent.

In 1974 this court adopted the "clearly mistaken test" as its standard of review in sentence appeals. *McClain v. State*, 519 P.2d 811 (Alaska 1974). That standard has never been abandoned. "Under the clearly mistaken test, the sentence will be modified only in those instances where the reviewing court is convinced that the sentencing court was clearly mistaken in imposing a particular sentence." *Id.* at 813 (footnote omitted).

I am not convinced that the superior court was clearly mistaken in imposing the sentence that it did in this case. Thus, I would affirm the sentence.