Victor **FOINTNO**, Appellant (Defendant Below),

v.

**STATE of Indiana, Appellee** (Plaintiff Below).

No. 1283S460.

Supreme Court of Indiana.

Jan. 6, 1986.

Max Cohen and David Capp, Cohen & Thiros, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a jury trial, Defendant (Appellant) was convicted of one (1) count of class A felony rape, Ind.Code § 35–42–4–1 (Burns 1979 Repl.), three (3) counts of class A felony criminal deviate conduct, Ind.Code § 35–42–4–2 (Burns 1979 Repl.), two (2) counts of confinement, a class B felony, Ind.Code § 35–42–3–3 (Burns 1982 Cum. Supp.), one (1) count of robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1979 Repl.), and one (1) count of intimidation, a class D felony, Ind.Code § 35–45–2–1 (Burns 1982 Cum.Supp.). He was sentenced to various consecutive terms of imprisonment totalling 104 years.

This direct appeal raises several issues, which we have restated as follows:

1. Whether the trial court erred in admitting expert testimony derived from analysis of a "rape kit" when the "rape kit" had been negligently destroyed by police and was not available when requested by a discovery motion.

2. Whether the evidence was sufficient to sustain the convictions.

3. Whether the 104-year sentence is manifestly unreasonable, in light of Defendant's background and the facts and circumstances of this case.

We affirm the convictions but remand this cause with instructions to modify the sentence. The facts are set out, as needed, in our discussion below.

## ISSUE I

Defendant contends that he was deprived of due process of law by the trial court's permitting a State's expert witness to testify concerning results of his tests upon specimens in the "rape kit" assembled when the victim went to a hospital shortly after the assault. The parties basically agree that two discovery orders obtained by Defendant encompassed the "rape kit," and that Anderson police negligently destroyed it after the samples had been tested by the expert witness but before Defendant had had an opportunity to have them tested by his own experts. The "rape kit" also included hairs which had never been compared with specimens from Defendant and could not be so compared, because of the destruction.

The "rape kit" included materials and containers for collecting specimens for use in determining whether there had been a sexual assault and in identifying the assail-

ant. The specimens in this case included blood and seminal residue.

The victim acknowledged that she had had sexual intercourse with her husband about eight (8) hours before the assault occurred. However, the State's expert testified that, based on his analysis of the specimens from the "rape kit," Defendant and the victim's husband, the seminal residue collected in the "rape kit" had not been secreted by her husband, and that Defendant was in that segment of 88% of the male population, any member of which could have secreted it. The expert could not, based on his analysis of the specimens, directly implicate Defendant.

On appeal, Defendant claims that he was not provided with discovery and that admission of the expert's testimony, above related, in view of the destruction of the kit and its unavailability to him, violated due process requirements. *See generally, United States v. Bagley* (1985), — U.S. —, 105 S.Ct. 3375, 87 L.Ed.2d 481; *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. We find no reversible error because the record does not demonstrate that Defendant presented these arguments before the trial judge, who, accordingly, was not given the opportunity to ameliorate against the harm, if any, caused by admission of the evidence and the State's failure to respond to discovery.

The only record we have of the matter being raised prior to the filing of the motion to correct errors is an entry by the trial judge, read in open court out of the presence of the jury, stating that the fact the "rape kit" had been negligently destroyed, standing alone, did not require that evidence derived from the specimens be excluded. From the court's ruling we cannot discern the specific grounds for objection, or the time or manner in which it was made.

If the Defendant made a timely request for access to the materials subsequently lost, with a view toward analysis that might either exonerate him or discredit the State's expert witness he may very well have been entitled to exclude the testimony. However, there is nothing in the record concerning the procedure employed to exclude the testimony, the time of protestation or the grounds therefor.

Thus, from what is presented to us on this appeal we can only speculate that the testimony of the State's expert witness may have, under the circumstances, presented the potential for substantial error. Although we certainly do not condone the negligent loss of the "rape kit," it is well established that a party objecting to the admission of evidence must make a timely objection demonstrating the basis for excluding it, and on appeal must provide the reviewing court with a record demonstrating the error and the harm resulting. *See, Watkins v. State* (1984), Ind., 460 N.E.2d 514, 515; *cf. Wright v. State* (1984), Ind., 467 N.E.2d 22, 24 (where State's withholding of evidence was not deliberate, and defendant otherwise did not show prejudice stemming from failure to provide discovery, no reversible error occurred). Defendant has failed to establish reversible error in this case.

## ISSUE II

■ Defendant contends that the evidence presented by the State was not sufficient to sustain the convictions. The record, however, includes substantial evidence supporting the jury's conclusions that Defendant committed these crimes.

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses."

*Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264 *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. Moreover, this Court has repeatedly held that convictions for rape or criminal deviate conduct may rest upon the uncorroborated testimony of the victim. *See, e.g. Bowen v.*

*State* (1985), Ind., 478 N.E.2d 44, 46–47; *Shippen v. State* (1985), Ind., 477 N.E.2d 903, 904 and authorities cited.

The victim testified that she had taken her seven-year-old daughter to a hospital emergency room for treatment of an earache. The physician there gave her a prescription which the victim had filled at a drugstore at about 2:00 a.m. When the victim returned to her van and started to drive away, a man whom the victim later identified as Defendant approached the van, pointed a small pistol at her and ordered her to let him inside. The man then drove the van to a nearby apartment complex parking lot. There he instructed the victim to tell her child to lie on a back seat and turn her head away. During the following two (2) hours the man repeatedly required the victim to submit to a variety of sexual acts. He also took $42.00 from her, and implied that he would harm her if she reported the assault to authorities.

The victim observed a maroon-colored automobile parked in the drugstore parking lot while she was there. It was gone when next she saw the lot shortly after she drove out of the apartment complex parking lot after her assailant had departed.

The victim subsequently chose three (3) photographs, out of an array of about 200, as resembling her assailant. Two of these photographs, gleaned from handgun registration records, depicted Defendant. Police eventually obtained a search warrant for Defendant's home, and the victim, thereafter, identified a pistol and jacket recovered during that search as having been in her assailant's possession during the assault. The State also presented testimony that Defendant owned a maroon-colored automobile and had been in the crime scene area shortly before these crimes occurred. During presentation of her testimony, the victim unequivocably identified Defendant as her assailant.

Defendant presents various arguments challenging this evidence. He suggests that the medical evidence from the initial examination of the victim, which demonstrated that the victim had suffered comparatively little trauma, disclosed that no assault had occurred. However, the State presented other medical evidence consistent with a sexual assault having occurred. As to her identification of him as the assailant, Defendant emphasizes that a composite drawing prepared from her description was shown to guards at nearby Pendleton Reformatory, and that they stated that the drawing resembled one Bruce Johnson, who had recently been released, but later had been murdered. However, an officer familiar with Johnson, and who had seen Johnson shortly before these crimes occurred, stated that the drawing did not resemble Johnson in several respects. Defendant also emphasizes that the victim testified that he appeared lighter in weight and darker in complexion than he was at the time of the assault. These acknowledged differences in the appearance of the Defendant and of assailant, as perceived by the victim, went to the weight of the evidence and the credibility of the witness. We also note that the victim's identification testimony in this regard was corroborated by another State's witness.

This record includes substantial evidence that the victim and her daughter suffered confinement, that the victim endured repeated sexual assaults, robbery and intimidation, and that Defendant committed these acts. The evidence was sufficient to sustain all convictions.

## ISSUE III

■ Defendant contends that the 104-year total sentence is manifestly unreasonable in light of mitigating factors presented by the record. Mindful of the discretion vested in the trial court in matters of sentencing, we nevertheless agree and modify the sentence in accordance with this opinion.

■ Art. I, § 18 of the Indiana Constitution provides that:

"The penal code shall be founded on the principles of reformation, and not vindictive justice."

Art. I, § 16 provides in pertinent part that:

"Excessive fines shall not be imposed. Cruel and unusual punishments shall not be inflicted."

Neither of these provisions were violated by the sentences in this case, but read together they reveal an underlying concern in our State Bill of Rights that, notwithstanding society's valid concerns with protecting itself and providing retribution for serious crimes, the State criminal justice system must afford an opportunity for rehabilitation where reasonably possible.

The cited provisions thus allow broad legislative discretion in determining the range of prison terms appropriate for particular crimes. However, in order to prevent manifest injustice in extreme cases, the Judicial Article of the Constitution, as amended in 1970, explicitly recognizes this Court's authority to review the sentence imposed. Art. VII, § 4 provides:

"The Supreme Court shall have, in all appeals of criminal cases, the power to review all questions of law and to review and revise the sentence imposed."

Similar authority is vested in the Court of Appeals under Art. VII, § 6.

In *Beard v. State* (1975), 262 Ind. 643, 649, 323 N.E.2d 216, 219, this Court stated that it would not exercise the power granted under Art. VII, § 4 until a program of policies and procedures governing this authority could be established. Subsequently, we promulgated the Ind.Rules for the Appellate Review of Sentences. Rule 2 provides:

"(1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the *character of the offender.*

(2) A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense *and offender* for which such sentence was imposed." (Emphasis supplied.)

Since we promulgated these rules in 1978, this Court has routinely reviewed sentences under the criteria stated in Rule 2. *See, e.g. Sandlin v. State* (1984), Ind., 461 N.E.2d 1116; *Blackmon v. State* (1983),

Ind., 455 N.E.2d 586; *Abercrombie v. State* (1982), Ind., 441 N.E.2d 442.

Addressing a contention that a sentence was manifestly unreasonable in light of these rules and our sentencing statutes this Court recently stated:

"Within the parameters of applicable sentencing statutes, the trial court is vested with wide discretion to determine whether the presumptive sentence will be enhanced because of aggravating factors involving the particular defendant or crime, and whether the terms of imprisonment stemming from multiple convictions shall be served concurrently or consecutively. *See* Ind.Code §§ 35–50–1–2 (Burns 1979 Repl.), 35–38–1–7 (Burns 1984 Cum.Supp., formerly Ind.Code § 35–4.1–4–7, Burns Code Ed. 35–50–1A–7 [1979 Repl.]). Thus a trial court may, upon consideration of relevant facts and information, enhance the basic penalties, impose consecutive sentences, or both.... However, if the trial court enhances the penalties or imposes consecutive sentences, the record must demonstrate that 'the determination was based upon the consideration of the facts of the specific crime, the aggravating *and* mitigating circumstances involved, and *the relation of the sentence imposed to the objectives which will be served by that sentence.'* " (Citations omitted and emphasis supplied.)

*Shippen v. State* (1985), Ind., 477 N.E.2d 903, 905.

In *Cunningham v. State* (1984), Ind. App., 469 N.E.2d 1 (*trans. denied*), our Court of Appeals for the first time applied Rule 2 to modify a sentence otherwise authorized by applicable statutes. The defendants, a married couple, were convicted of various charges of theft, conversion and perjury stemming from a scheme to obtain food stamps. The trial judge sentenced the husband to consecutive terms totalling sixteen (16) years imprisonment. The Court of Appeals concluded that the trial judge had not adequately weighed the mitigating evidence, and directed that the order for consecutive sentences be modified to con-

current terms of two (2) years imprisonment. In the course of its analysis the *Cunningham* court stated:

"Under the above authority, we perceive a two-step appellate procedure in this area. We will review a sentence on appeal only when at first blush the sentence imposed appears to be 'disproportionate,' that is, 'manifestly unreasonable in light of the nature of the offense and the character of the offender.' If after review we determine 'no reasonable person could find such sentence appropriate to the particular offense and offender,' we will revise the sentence on appeal so as to make such sentence appropriate.

We are in as good a position as the trial court to make these determinations based upon the record before us in a proper case. All the material available to the trial court at time of sentencing is equally available to us on appeal. It is contained in the record. Further, *the appellate process is uniquely suited to dispassionate consideration of the subject free of the everyday pressures of a trial courtroom.* Although loath to review any sentence imposed by a trial court we are constitutionally mandated to do so when, as in this case, it appears at first blush the sentence imposed was manifestly unreasonable." (Emphasis supplied.)

*Id.,* 469 N.E.2d at 8

We agree with this analytical framework. In this case, notwithstanding the seriousness of Defendant's crimes and the anger and revulsion engendered within us by his degenerate and outrageous conduct, in light of substantial mitigating factors, which we review below, we find "at first blush" that the consecutive sentences totalling 104 years are manifestly unreasonable.

The *Cunningham* court cited Professor Smithburn's thoughtful analysis of appellate sentence review published shortly after the rules for review of sentences were promulgated. See Smithburn, *Sentencing in Indiana: Appellate Review of the Trial Court's Discretion,* 12 Val.U.L.Rev. 219 (1978). Citing the *A.B.A. Project On Standards for Criminal Justice, Standards for Appellate Review of Sentences,* § 1.2 (1967), he stated:

"The general objectives sought to be achieved through appellate review of judicial sentencing have been identified as:

1. The correction of the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;

2. The facilitation of the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding the sentence;

3. The promotion of respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and

4. The promotion of the development and application of criteria for sentencing which are both rational and just."

*Id.,* 12 Val.U.L.Rev. at 223. He went on to state:

"A final objective in appellate review of sentencing is the development of the basic principles of sentencing policy. If the sentencing judge is required to articulate his reasoning when determining a sentence, and the appellate courts similarly explain in written opinions the basis for the modifications of a sentence on appeal, the result could be a set of consistent criteria which may be followed in arriving at sentencing decisions. Not only is it possible that this may contribute to the resolution of the problem of disparate sentences, but on a broader scale it may lead to the formulation of sound sentencing policy. The availability of sentencing review offers the appellate courts the opportunity to play a leading role in the achievement of this objective.

The objection most frequently raised to appellate review of sentences is that the availability of such review will open floodgates which will drown the appellate courts in a deluge of frivolous appeals. In England, whose sentences have been subject to appellate review for some seventy years, this concern simply

has not been evidenced by the experiences of that country's judicial system. In addition, the apprehension that review of legal sentences would severely overburden the courts of this nation has been proved unfounded by the experience of those states that permit appellate review of sentences. (Footnotes omitted.)

*Id.*, 12 Val.U.L.Rev. at 224–25. *See also*, Frankel, *Lawlessness in Sentencing*, 41 U.Cinn.L.Rev. 1 (1972); Zalman, *A Commission Model of Sentencing*, 53 N.D.Lawyer 266 (1977).

Although appellate review of a trial court's sentencing discretion has been recognized in Indiana comparatively recently, the appellate courts in our sister states have for some time reviewed statutorily authorized sentences under formulations similar to our appellate review of sentences rules. The Appellate Division of the Supreme Court of New York stated in *People v. Silver* (1960), 10 A.D.2d 274, 276, 199 N.Y.S.2d 254, 256:

> "The prime aim of socialized justice, and inherent in its administration in our criminal courts today, is a dispassionate and conscientious evaluation of the unique aspects of the convicted offender's total personality, his intelligence, his character structure, his demonstrated ability to conform, his capacity to accept our social disciplines and limits, and his over-all stability."

In *Silver* the defendant had been convicted of grand larceny and sentenced to an executed term. The reviewing court modified the sentence to probation because the defendant had no criminal record, and a stable employment and family history.

In the very recent case of *People v. Steffens* (1985), 131 Ill.App.3d 141, 86 Ill. Dec. 392, 475 N.E.2d 606, the defendant had been convicted of murder and sentenced to thirty (30) years imprisonment. Reviewing several Illinois authorities, the Court of Appeals modified the sentence to a 20-year term in light of mitigating evidence, and particularly concluded that the defendant's rehabilitative potential had not been given adequate consideration. *Id.,*

131 Ill.App.3d at 151–53, 86 Ill.Dec. at 401–02, 475 N.E.2d at 615–16. In the leading case of *State v. Leggeadrini* (1977), 75 N.J. 150, 380 A.2d 1112, discussed at length in Professor Smithburn's article, see 12 Val. U.L.Rev. at 232–36, the 66-year-old defendant was convicted of second degree murder in the shooting death of a neighbor who had argued with his wife. Even though the defendant had no prior criminal convictions, and the record included substantial mitigating evidence, the trial judge sentenced him to the maximum term, 25–30 years. The Supreme Court of New Jersey concluded that the trial court had not adequately assessed the defendant's potential for rehabilitation, and modified the sentence to 7–10 years imprisonment.

Other cases from around the country in which reviewing courts modified sentences based upon similar considerations include: *Wightman v. State* (1980), Alaska, 606 P.2d 797 (sentences totalling 15 years for robbery and other charges would be modified so that five (5) years would be suspended, with probation, in light of no prior criminal record and information in psychological assessment); *Bolhouse v. State* (1984), Alaska App., 687 P.2d 1166 (where defendant was convicted of two counts of sexual assault and attempted sexual assault, and given 18-year term with four (4) years suspended, but defendant had not used a deadly weapon nor injured victims, case was remanded for sentence of not more than 10 years); *State v. Sety* (1979), Ariz.App., 121 Ariz. 354, 590 P.2d 470 (where trial court entered conviction for voluntary manslaughter upon murder charge and sentenced defendant to 9–10 years, reviewing court modified sentence to two (2) years already served, in light of no criminal record and victim's provocation of attack); *State v. Higginbotham* (1984), Minn., 348 N.W.2d 327 (where prior criminal history had already been considered in state statutory sentencing scheme, and there were no other aggravating factors, reviewing court reduced the enhanced sentence for robbery to the presumptive statutory term); *State v. Ward* (1970), 57 N.J. 75, 270 A.2d 1 (reviewing court modified

executed term to a suspended sentence for possession of marijuana, in light of no prior criminal history and other mitigating evidence); *State v. Blanton* (1979), 166 N.J. Super. 62, 398 A.2d 1328 (sentence modified from executed term at state youth center to probation for assault upon police officer and other charges, in light of particular circumstances of crime and other mitigating evidence); *People v. Jensen* (1985), 111 A.D.2d 986, 490 N.Y.S.2d 304 (maximum executed sentence given 19-year-old defendant for criminal negligent homicide stemming from driving while intoxicated reduced, where defendant had no prior record and other mitigating evidence was presented); *People v. Pena* (1980), 74 A.D.2d 513, 425 N.Y.S.2d 1 (reviewing court modified sentence for weapons possession in light of defendant's employment history and family history); *Wooten v. State* (1985), Okl.Ct.Crim.App., 702 P.2d 59 (where corrections inmate was convicted of attempting to smuggle whiskey into penal institution, reviewing court modified sentence from 10 years to three (3) years because of mitigating circumstances).

In light of these authorities, we turn to the instant case. The presumptive sentence for a class A felony is 30 years imprisonment, which may be enhanced by up to 20 years for aggravating circumstances or reduced by as much as 10 years for mitigating circumstances. Ind.Code § 35-50-2-4 (Burns 1979 Repl.). The presumptive sentence for a class B felony is 10 years imprisonment, which may be enhanced by up to 10 years for aggravating circumstances or reduced by as much as four (4) years for mitigating circumstances. Ind.Code § 35-50-2-5 (Burns 1979 Repl.). The presumptive sentence for a class D felony is two (2) years imprisonment, which may be enhanced by up to two (2) years for aggravating circumstances. Ind.Code § 35-50-2-7 (Burns 1979 Repl.).

Ind.Code § 35-38-1-7(a) (Burns 1985 Repl., formerly 35-4.1-4-7(a), Burns Code Ed. 35-50-1A-7(a) [1979 Repl.]) generally provides that in rendering sentence the trial court must consider the risk that the defendant will commit another crime, the nature and circumstances of the crime committed, and the defendant's prior criminal record, character and condition. Among the factors which the trial court may consider as aggravating circumstances justifying enhanced or consecutive terms are the court's conclusion that the defendant is in need of correctional or rehabilitative treatment best provided at an institution. Ind. Code § 35-38-1-7(b)(3) (formerly 35-4.1-4-7(c)(3), Burns Code Ed. 35-50-1A-7(c)(3)). Section 35-38-1-7(b)(4) (formerly 35-4.1-4-7(c)(4), Burns Code Ed. 35-50-1A-7(c)(4)) provides that the trial court may determine that a reduced or suspended sentence would "depreciate" the seriousness of the crimes. Section 35-38-1-7(d) (formerly 35-4.1-4-7(d), Burns Code Ed. 35-50-1A-7(d)) provides that the trial court may consider any other appropriate factor in rendering sentence.

The trial court sentenced Defendant to enhanced terms of 40 years for the class A felony rape and criminal deviate conduct counts, the three (3) criminal deviate conduct counts to be served concurrently but consecutively to the rape count, to two presumptive terms of 10 years for the class B felony confinement counts, to be served concurrently but consecutively to the other counts, to a presumptive term of 10 years for the class B felony robbery count, to be served consecutively to the other counts, and to an enhanced four-year term for the class D felony intimidation count, to be served consecutively to all the other sentences, for a total term of 104 years. The court cited as aggravating factors:

"1. The whole series was aggravated; that it was heinous, despicable, atrocious and disgusting; the fact that the incident lasted over two hours; that there was no concern for the mental or physical welfare of the victims.

2. The imposition of a reduced sentence would depreciate the seriousness of the crimes;

3. That the crimes threatened serious harm and that the victim did not induce or facilitate the commission of the crimes;

4. There is need for correctional and rehabilitative treatment provided by the proper penal facility."

However, the sentencing order and trial court's sentencing statement include *no* consideration of the mitigating evidence presented. Our review at this juncture is hampered by the fact that the presentence report is not in the record, but the parties agree that Defendant had *no* criminal record prior to this assault, and had served as an Anderson fireman for about 10 years, apparently with no serious problems or disciplinary citations. Although the trial court quite correctly evaluated and cited the atrocious character of the assault and confinement, i.e. "the nature of the offense," the court appears to have given no consideration to "the character of the offender" except as it is portrayed by his commission of these crimes.

■ A third factor we consider, but nevertheless approach with much sensitivity for the victims of any sexual assault, is that Defendant did not beat, wound or otherwise severely brutalize the victims except as is inherent in the commission of the crimes. While the absence of such conduct does not in *any* way lessen the severity of the crimes as such, and thus does *not* constitute a mitigating factor justifying a reduction or suspension of the presumptive sentence, the presence of aggravated brutality distinguishes the defendants who commit such acts and justifies a substantially aggravated term where it is present. We do not by this observation debase the seriousness of these crimes themselves. Nor do we suggest that the absence of collateral brutality prevents the imposition of an enhanced sentence. Nevertheless, a rational· sentencing scheme should punish more severely those who brutalize the victims of their crimes. *Cf. Johnson v. State* (1983), Ind., 455 N.E.2d 897, 902 (opinion of DeBruler, J.); *accord, Bolhouse v. State* (1984), Alaska App., 687 P.2d 1166, 1173–79 (reviewing court modified sentences for sexual assaults; court specifically noted that the defendant did not injure victims); *People v. Dixon* (1985), 133 Ill.App.3d 1073,

89 Ill.Dec. 242, 480 N.E.2d 128 (reviewing court modified sentence imposed to sentence imposed upon accomplice convicted of rape, etc.; reviewing court noted that defendant, unlike accomplice, did not brutalize victim); *see also Payne v. State* (1985),. Ind., 484 N.E.2d 16, 18 (one purpose of enhanced penalty for robbery resulting in bodily injury is to protect society from defendants who would harm victims of crimes).

A comparison with cases where we have upheld substantial sentences supports our position in this case. For example, in *Zachary v. State* (1984), Ind., 469 N.E.2d 744, we upheld consecutive 27-year sentences for rape and criminal deviate conduct, where the defendant has no prior criminal record but the victim:

"was *brutalized repeatedly* accompanied by *physical beatings....* The separate and distinct crimes were committed with *particular brutality* over a long period of many hours showing that the defendant lacks basic human values that can be dealt with by prolonged confinement." (Emphasis supplied.)

*Id.,* 469 N.E.2d at 749–50; *see also, Eubank v. State* (1983), Ind., 456 N.E.2d 1012, 1017–1018 (upholding total sentence of 132 years for escape, kidnapping, armed robbery and theft, where defendant had a long history of criminality and one victim was a minor and another a policeman); *Allen v. State* (1983), Ind., 453 N.E.2d 1011, 1012–1014 (upholding total sentence of 158 years for criminal deviate conduct, burglary, battery and habitual offender finding where record revealed that trial court had considered mitigating evidence, defendant had two prior convictions for violent assaults against women, had been scouting the area for a victim, and had brutalized and stabbed victim in her home where children were present); *Abercrombie v. State* (1982), Ind., 441 N.E.2d 442 (upholding 50-year sentence for convictions of rape, burglary, robbery and theft where defendant had prior criminal history and violently assaulted 69-year-old victim).

We recognize reasonable minds may differ on what sentence is appropriate in any given case. This is particularly true where multiple sentences are imposed for several offenses committed in one criminal episode. It is for this reason that the "manifestly unreasonable" rule of appellate review was adopted. Given the degree of subjectivity that cannot be eliminated in the sentencing process, it would be inappropriate for us merely to substitute our opinions for those of the trial judge.

In view of the enhancements imposed upon the rape and deviate conduct counts and the provision for consecutive sentences as between them, amounting to a sentence of 80 years upon those four offenses, and further considering the reduced significance of the confinement counts and the robbery offenses when compared with the others and regarded as parts of the whole episode, we are of the opinion that the addition of twenty-four additional years evidences a vindictiveness proscribed by Art. I § 18 of our State Constitution, *supra* and would not be found appropriate to the offenses and offender with which we are here concerned. The sentences in toto, are, therefore found by us to be manifestly unreasonable.

The convictions are affirmed, and this cause is remanded to the trial court, which is instructed to modify the sentencing order to require that the sentences upon the confinement, robbery and intimidation convictions be served concurrently with one another and concurrently with the 80-year sentences upon the rape and deviate conduct convictions.

DeBRULER and SHEPARD, JJ., concur.

GIVAN, C.J., dissents with opinion in which

PIVARNIK, J., concurs.

GIVAN, Chief Justice—dissenting.

I respectfully dissent from the majority opinion. The majority correctly cites Ind. R.App.Rev.Sent. 2. Then the majority ignores the findings of the trial court, concedes that we do not have the presentence investigation report before us and proceeds to weigh the evidence. The majority concludes, because appellant had no prior record and had been a city fireman, he should have the benefit of a reduced sentence rather than an enhanced sentence.

The majority apparently puts great weight on the fact that neither the victim nor her small child was physically injured other than the rape itself. However, the majority in recitation of the facts correctly notes that appellant approached the victim with a gun which he pointed at her. He threatened bodily harm to her if she did not cooperate. He also threatened bodily harm if she reported the incident to the police. The victim's seven-year-old daughter was in the automobile at all times during the sexual attacks and appellant instructed the victim to tell her child to get in the back seat and turn her head.

I disagree with the majority in giving credit to appellant for not injuring the victim or her child. Appellant clearly demonstrated to the victim that she certainly would be hurt if she did not cooperate. The fact that the victim had the good sense and was self-sacrificing enough to place herself between appellant and her seven-year-old daughter is a credit to her and is not a fact which should benefit appellant under these circumstances. The trial judge had before him all of the facts including the presentence investigation. He heard the witnesses and saw the demeanor of the appellant. I disagree with usurping his prerogative and impinging his judgment with our fact finding observations.

I would affirm the trial court in all respects.

PIVARNIK, J., concurs.