THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MATTHEW GRIFFITH, Appellant.

First Department, November 20, 1973.

*Philip L. Weinstein* of counsel (*William E. Hellerstein* and *Robert Kasanof*, attorneys), for appellant.

*Jeffrey P. Sinensky* of counsel (*Albert A. Capellini* with him on the brief; *Mario Merola, District Attorney*), for respondent.

MURPHY, J. Defendant was indicted for serious crimes, including robbery in the first degree and assault in the first degree. After discussion among the court, defense counsel and the Assistant District Attorney, defendant offered to plead guilty to the crime of robbery in the third degree, a Class D felony, to satisfy all counts in the indictment. After the Assistant District Attorney recommended acceptance of the plea and after ascertaining that it was being voluntarily made, the court said: "there was a conference between your attorney, the Assistant District Attorney, and the Court with regards to what possible sentence may be meted out here, and that it was with the consent of the Court they thought that a reasonable sentence under the circumstances in this case will be three years. Now, the Court is prepared to sentence you to three years on the adjourned date after I receive the probation report."

Defendant then confessed to his involvement, the guilty plea was taken and a date fixed for sentence.

Later that day the case was recalled at the request of the Assistant District Attorney who had participated in the "plea bargain". The court was then informed that, unknown to this particular prosecutor, another member of the prosecutor's staff had previously rejected a three-year-maximum-sentence offer and had offered four years. In view of the foregoing, the prior three-year sentence recommendation was withdrawn. The court, however, after noting some of the serious consequences which might result if such withdrawal was permitted, denied the application, stating: "in the absence of any application from the defendant to withdraw his plea — I will allow the guilty plea to stand. I will sentence him on the adjourned date. And I will keep my promise for three years."

Shortly thereafter the case was again recalled, this time at the request of the then District Attorney of Bronx County. He disclosed his awareness of the agreed-upon disposition of the case, but nevertheless requested the court to impose the maxi-

mum permissible sentence under the plea (7 years), thereby, *inter alia,* overruling the previous recommendations of two of his assistants. In view of the prior proceedings, however, he agreed to voice no objection to a plea withdrawal application. Defendant refused to withdraw his plea. After some further discussion the court, recognizing that "new legal history [was being] written," vacated the guilty plea on its own motion and set the case down for trial. Some two weeks later, on November 22, 1971, the case was recalled to "clear the record". The court explained to defendant the reasons why it could not carry out its promise and, instead, offered to sentence defendant, if he would again plead guilty (since the previous plea had been vacated), on the basis of the probation report. Defendant then "moved" to "withdraw" his guilty plea and a date for trial was set. We previously denied and dismissed defendant's article 78 proceeding to restrain prosecution of the trial (before another Judge and a jury), which resulted in defendant's conviction on all four counts of the indictment and his sentence to State prison for concurrent indeterminate terms not to exceed 10 years. On this appeal, defendant asserts that he was entitled to specific peformance of his "plea bargain" and that his after-trial conviction was invalid since he had already been placed in jeopardy by the entry of his guilty plea to the same offense. Since we agree with appellant's first contention, we find it unnecessary to reach the second.

We are, of course, cognizant of the current criticism of "plea bargaining", the call by segments of the public, the press and certain public officials for its abolition and of recent legislation curtailing it with respect to certain offenses. (L. 1973, ch. 276.) However, as Presiding Justice STEVENS perceptively noted recently: "The term 'plea bargaining' suffers either from an oversimplification, a lack of comprehension of its proper place in the system of criminal justice, or a tendency to ascribe to it any weaknesses or ills which presently exist in the system. If pleas were not allowed a trial of every felony indictment returned in a single year would result in a total breakdown of the courts' operations." (See "Little Concern or Support Seen for Needs of Courts", N. Y. L. J., May 1, 1973, pp. 25, 29, col. 1.)

In *Santobello* v. *New York* (404 U. S. 257, 260–261) Chief Justice BURGER acknowledged the significant role dispositions by agreement play in the administration of justice:

"Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States

and the Federal Government would need to multiply by many times the number of judges and court facilities.

"Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. * * *

"However, all of these considerations presuppose fairness in securing agreement between an accused and a prosecutor."

In addition to the reasons above set forth, a plea bargain often represents an honest evaluation by the prosecutor and defense counsel of the strengths and weaknesses of their respective positions. In many instances grand juries "over-indict" defendants and charge them with crimes which prosecutors cannot prove. The court must rely on the fact that the "offer" of the District Attorney reflects his best estimate of the credibility of witnesses and proof available. "Acceptance" of the plea reflects the estimate that the defendant and his counsel share in the prospect of acquittal at trial. Accordingly, what often appears to be a "break" for an accused is nothing more than the mere acceptance of the true factual situation and a plea to the crime the accused actually committed; or the one the prosecutor believes he can, by the requisite evidence, prove he committed. The court should refuse a plea only if the agreement reached would "tie the hands of the court" in that the scope of sentence provided is inadequate for the crime and the defendant involved.

All three prosecutors involved here agreed to permit defendant to plead guilty to robbery in the third degree, a Class D felony, to cover an indictment charging more serious crimes; the only disagreement arose after the plea in connection with the sentence recommended by the first prosecutor and accepted by the defendant and the court. In passing, it is interesting to note that the District Attorney agrees that in an analogous situation but where a second defense counsel or the defendant himself decided the sentence to be too harsh, the People would insist on the sentence agreed upon. This court is testament to the many

"meritless" appeals on this point. Equal justice requires application of the law equally to the People and to the defendant.

Prefatorily, we place no significance on what occurred on November 22, 1971, when defendant "withdrew" his guilty plea, since that plea had already been unilaterally vacated by the court on November 8, 1971. Nor, on the record before us, can defendant be deemed to have ever abandoned his principal claim pressed on this appeal. The disposition of this appeal, then, must turn on the events of November 8, 1971, when the bargain was struck and then repudiated by the District Attorney and the court.

Appellant, of course, had no absolute right to have his plea of guilt accepted. (*Lynch* v. *Overholser,* 369 U. S. 705; *Santobello, supra.*) But after its acceptance and full agreement on sentence reached, in the absence of fraud the court had no inherent power to set the plea aside without defendant's consent. (*Matter of Lyons* v. *Goldstein,* 290 N. Y. 19; *Matter of Sekaloff* v. *Hogan,* 41 A D 2d 815.) Unlike *Santobello* and *Sekaloff,* we are not concerned merely with an unkept promise by the prosecutor, for here the court also agreed to impose the recommended sentence. Although the promised sentence was to be imposed after receipt of the probation report, it is apparent that the court was simply recognizing its statutory obligation to first receive such report before it could lawfully pronounce sentence (CPL 390.20); and the sentence was not made conditional on the contents thereof. Significantly, the decision to set aside the plea was not predicated on the probation report which had only just been requested. It was after the court repudiated its promise and had vacated the plea, that any reference was made to a Judge's obligation to examine a probation report before pronouncing sentence.

In reaching our decision we have taken note of the position recently reached by our colleagues in the Second Department that, prior to the receipt of a presentence report, "there cannot be an absolute sentence promise by the court at the time of acceptance of a guilty plea, as that would violate a statutory mandate and public policy. Prior to the imposition of sentence the court must order a presentence investigation and may not pronounce sentence prior to receiving a written report of such investigation (CPL 390.20, subd. 1)." (*People* v. *Selikoff,* 41 A D 2d 376, 379.) We come to a contrary conclusion.

The purpose of the presentence report is to aid the sentencing court in individualizing punishment. (*Williams* v. *New York,* 337 U. S. 241; *People* v. *Peace,* 18 N Y 2d 230, cert. den. 385

U. S. 1032.) The extent of its use is discretionary. Where the court has, as here, already considered the facts, defendant's history and the agreement of counsel, and has decided to grant a sentence concession in exchange for a plea, we do not believe the statute above cited imposes any legal impediment to its enforcement. Under analogous circumstances this court and the Court of Appeals have held that statutory language need not be literally complied with where, as here, a court decides to exercise its permissible discretion on facts in its possession which are substantially similar to facts that will be presented by a different method and at a different time. (Cf. Mental Hygiene Law, §§ 81.19, 81.21; *People* v. *Gordian,* 39 A D 2d 861; *People* v. *Carter,* 31 N Y 2d 964.)

As above noted, defendant offered to plead guilty to a Class D felony and this was acceptable to the court and prosecution. In exchange for such plea, defendant sought a sentence concession. A three-year maximum sentence was agreed upon. At this point, the matter should have been concluded and the court should not have withdrawn its promise, and vacated the plea, merely because another prosecutor wanted a four-year, instead of a three-year recommendation, or the District Attorney later thought the court should be allowed the full scope of permissible punishment. This problem of internal disagreement was fully dealt with in *Santobello* (404 U. S. 257, 262, *supra*): "The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done." (See, also, concurring opinion of DOUGLAS, J., p. 263.) Discussions between prosecutors and defense counsel must be conducted fairly and in "good faith". The underlying facts and the limits of authority should be thoroughly considered in relation to their respective clients before any plea negotiations are even undertaken, no less finalized. For when unconditional commitments are made the obligations resulting therefrom are equally binding on all the parties. Chaos in the court system and injustice to all parties would result in vacating pleas and judgments on the theory that what was agreed on does not now bind the court, the prosecutor, or the defense.

Before concluding, we deem it appropriate to comment on the apparent lack of uniformity in the plea taking process. While it is not now our intention to suggest any model form of plea colloquy, we do agree with the American Bar Association's view that judicial participation in plea discussions is undesirable. (See American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty

[1967], § 3.3, p. 71 *et seq.*) Guilty pleas should be encouraged, but the judicial function should be limited to determining: that its acceptance is in the public interest and receiving assurance from the defendant that he understands the nature of the plea; that the plea is freely and voluntarily made with full knowledge of the constitutional rights defendant is thereby waiving; that defendant committed the acts to which he is pleading guilty (or is knowingly and intelligently willing to plead guilty, without an express admission of guilt, to avoid the consequences of a conviction [cf. *North Carolina* v. *Alford,* 400 U. S. 25]); and that no promises by way of inducement have been made to defendant by his lawyer, the District Attorney, the court or anyone else other than those clearly and fully spread on the record. The only suggested deviation from the ABA standard is that if a sentence agreement is part of the bargain struck, the Judge should carefully advise the defendant that he is not bound by any such recommendation and that if he cannot impose the recommended sentence, after receipt and examination of the presentence report, defendant would be permitted to withdraw his plea if he then disagreed with the court's proposed sentence. While we recognize the risks inherent in even this limited judicial participation (see, e.g., *United States ex rel. Elksnis* v. *Gilligan,* 256 F. Supp. 244, 254–255; American Bar Association Standards, *supra,* p. 73), we must give consideration to currently prevailing practices and the little likelihood of any agreements being reached without such stipulation.

In light of the foregoing, the judgment of Supreme Court, Bronx County (BLOOM, J.), rendered February 10, 1972, should be reversed and vacated, on the law and as a matter of discretion in the interest of justice, defendant's guilty plea reinstated and the proceeding remanded for resentence with the specific performance of the court's promise.

STEVENS, P. J., MARKEWICH, NUNEZ and TILZER, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on February 10, 1972, reversed and vacated, on the law and as a matter of discretion in the interest of justice, defendant's guilty plea reinstated and the proceeding remanded for resentence with the specific performance of the court's promise.