THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD JACOBSOHN, Also Known as RICHARD JACOBSON, Appellant.—Appeal by defendant, as limited by his motion, from a sentence of the Supreme Court, Kings County, imposed May 4, 1976, upon his conviction of petit larceny, upon his plea of guilty, the sentence being a term of imprisonment of one year. Sentence modified, as a matter of discretion in the interest of justice, by reducing it to a three-year period of probation and case remitted to the Criminal Term to fix the conditions of probation and for further proceedings pursuant to CPL 460.50 (subd 5). The case stems from defendant's employment as an assistant comptroller of the Prospect Heights Division of Long Island College Hospital. Under the indictment charging him with five counts of grand larceny in the second degree, defendant was accused of depositing checks payable to his employer in his own checking account. An audit by Long Island College Hospital revealed (and defendant admitted) that during the period from 1967 to 1972, such defalcations amounted to approximately $68,000. According to defendant's memorandum, and not controverted by the prosecution, the defendant was advised between his arraignment on January 27, 1976, and his plea of guilty on February 24, 1976, that if he made *satisfactory restitution* to his employer's insurance carrier, Hartford Accident & Indemnity Company, that he would be allowed to plead guilty to a misdemeanor in satisfaction of the indictment. In attendance at the proceeding held on February 24, 1976 was the attorney for the surety, a Mr. Barass. At the outset the court, in response to its query, was advised by Barass that the surety had received "completely satisfactory" restitution from the defendant, had "delivered a general release to him on the civil matter" and had "no further interest in restitution." The following pertinent colloquy ensued between the court, the Assistant District Attorney (Mr. Silverman) and defense counsel (Mr. Weiss): "THE COURT: *Counsel in view of that,* do you have an offer to make at this time? MR. WEISS: Yes sir. THE COURT: What is it then sir? MR. WEISS: At this time, Your Honor, defendant Richard Jacobsohn would like to withdraw his previous plea of not guilty and enter a plea of guilty to a charge of petit larceny, a class A misdemeanor. MR. SILVERMAN: I recommend the acceptance of the plea, Your Honor. * * * THE COURT: What you are pleading guilty to is the fact that on or about and between January 19, 1971 and January 10, 1972, you committed the crime of petit larceny, in that you took from the Prospect Heights Division of the Long Island College Hospital, a quantity of money in excess of $1,500? THE DEFENDANT: Yes, Your Honor. THE COURT: I have indicated by your attorney and for the record a few moments ago, apparently, *you have made restitution to the satisfaction of the parties concerned. Under those circumstances I am going to consider placing you on probation for a period not to exceed three years.* If after I read the probation report I find that I am not inclined to go along with the commitment I shall so advise you. You may then, if you wish to do so, withdraw your plea and go to trial, if you so

desire. Do you understand? THE DEFENDANT: I do." (Emphasis supplied.) Based upon the foregoing, the defendant withdrew his plea of not guilty and interposed a plea of guilty to petit larceny in satisfaction of the entire indictment. However, after the Criminal Term learned from reading the probation report that defendant had paid only $10,000 to the surety in restitution, and not the full amount of $68,000, it decided not to adhere to its previous commitment. The reason for its change of mind is reflected in the following portion of the transcript of the sentence proceeding held on May 4, 1976: "THE COURT: As I indicated the last time this case was on, counsellor, I'm not inclined to go along with the probation and so if you wish, you may either withdraw the plea and go to trial or the defendant can take the one year which I promised him. * * * MR. WEISS: * * * At the time of the agreement with Mr. Silverman, the assistant district attorney and at a conference with Your Honor, Mr. Silverman indicated to the court there was $68,000 embezzled and it might run as much as $100,000, $125,000 at the time. With that knowledge, I agreed that if restitution were made to the surety, they would give us an 'A' misdemeanor and a promise of probation * * * That [defendant may have stolen as much as $300,000 from the hospital], I may suggest to you, was a rumor at the institution * * * Now, I believe Mr. Klein [executive director at the hospital] may have sent you a communication since * * * he called me. THE COURT: Yes, Mr. Klein sent me a very informal communication. This man, according to everybody, actually took $68,000. MR. WEISS: Yes, we understand that. THE COURT: Now wait a minute, please! You don't understand that, apparently. *All that he ever gave back was less than $11,000. The insurance company made up the difference, not this defendant.* MR. WEISS: But it was Your Honor's suggestion that it was satisfactory to the surety— THE COURT: *But I didn't know that he had paid one-tenth of the amount and that my premiums and the premiums of other people made up his defalcation. * * * But I never thought it was going to be for a pittance. * * * If they would pay it out of the corporate director's pockets instead of the premiums which they take from other people and raise their premiums because they didn't make enough money, I might go along with it but fifty-six or fifty-seven thousand dollars of premiums paid by other people is making up this man's defalcations. * * ** I wonder whether the Board of Directors know what Mr. Klein has done or the people who subsidize. * * * *I'm sure the State Insurance Department would be very interested in this kind of nonsense. * * ** MR. WEISS: Your Honor, the defendant does not reside in New York; he doesn't work in New York * * * He has now—of course you know he's a married man with children. He has a decent job in Connecticut. He's been accepted by his neighbors, by his community, all with the knowledge of this * * * one incident. Now, would there be any good served to the People of the State of New York to incarcerate him and with all the things that would flow from that whereas he is out of the State, out of New York— THE COURT: Would YOU pay the $57,000 for him? MR. WEISS: Sir! THE COURT: Can the $57,000 be paid? MR. WEISS: No, it cannot. THE COURT: *Then he'll have to take one year or withdraw his plea * * * this was money that the insurance company made good for and I wonder whether I shouldn't write to the State of New York and tell them to stop raising the premiums of insurance to make up for this kind of nonsense. Maybe that's why our premiums keep going up all the time, counsel. The companies absorb them and then pass it on to the holders. * * ** MR. WEISS: In other words, it's Your Honor's position that he's being punished for what he did in the past. The purpose of this incarceration is strictly punishment and has nothing to do with rehabilita-

tion. THE COURT: *Well, rehabilitation will come when he's come out.* MR. WEISS: He's got a decent job. He works for J. C. Penney. THE COURT: *I'm sure if he's such a good man, they will hold a job for him but I'll not let a man walk off with $57,000 and have the People of the State of New York pay for it just because the hospital and the insurance company decided to give him the break.* I have to give the community a break too. You see, mine is a function that takes into consideration not only the defendant, but the community at large" (emphasis and bracketed matter supplied). It has been stated that a sentence must not only encompass the community's condemnation of the defendant's misconduct, but must also evaluate the possibilities of the defendant as a useful and responsible member of the community. Generally it is the community's gain whenever a family can be kept together as an integrated and emotionally satisfying unit with the head of the family meeting his responsibilities to it instead of unnecessarily marking time in jail *(People v Silver,* 10 AD2d 274, 276). In this case the Criminal Term, in the first instance, obviously was of the mind to follow such guideline when it stated at the taking of the plea, *inter alia,* that subject to reading the probation report, it would consider placing defendant on probation in view of the fact that he had made restitution "to the satisfaction of the parties concerned." It had as a firm foundation for such initial intention the fact that defendant was 35 years of age, married, the father of two children, employed by J. C. Penney as an appliance salesman, and had a previously unblemished record. However, in ultimately determining that defendant should receive a one-year prison term, the court disregarded the rehabilitative factor when it stated that "rehabilitation will come when he's come out." Instead, it based its one-year sentence not on the ground that defendant should also be punished by incarceration for his transgression, but solely on the fact that only $10,000 was given by defendant as "satisfactory restitution", while the insurance company paid the balance ($58,000) stolen by him. However, there is no evidence in the record that either defendant, his attorney, or the attorney for the insurance company, misled the court, when, in response to the court's query, "The amount is satisfactory to you?", the insurance company's attorney stated, "Completely satisfactory". Although the court did indicate that if, after reading the probation report, it was not inclined to go along with its commitment, it would allow the defendant to withdraw his plea and go to trial, it is manifest that the court's change of mind was not founded on any material information contained in the report, but rather on a pique, to wit, that insurance premiums generally might somehow be affected by the defendant making restitution of only $10,000 of the amount defalcated, while the surety made good on the $58,000 balance. In our opinion, the modification of sentence herein to three years' probation is not, as Mr. Justice Damiani suggests in his dissent, "an instance of unwarranted leniency for a 'white collar' crime". Rather, it is based on a moral commitment given by the Criminal Term and subsequently rescinded without just reason. In our opinion, a court, as attorneys who practice before it, has an obligation to honor any commitment made by it, absent extenuating circumstances, regardless of a party's race, religion, color of his skin or color of his collar. Margett, J. P., Rabin and Titone, JJ., concur; Damiani, J., dissents and votes to affirm the sentence, with the following memorandum: From 1962 until 1972 the defendant was employed as assistant comptroller of the Prospect Heights Division of Long Island College Hospital. After defendant resigned from his position, the hospital attempted to collect several bills from various insurance companies, etc., which were outstanding on its

books, only to find that they had been paid by checks which had been deposited in defendant's private checking account. When confronted, defendant at first denied all knowledge of the situation, but at a later meeting admitted taking some $16,000 to $17,000 in this manner. The hospital audited its books from 1967 to 1972 (records before 1967 were destroyed in a flood) and established defalcations by defendant during this period in the sum of $67,873.95. The hospital's proven loss was made good by its insurer. Defendant was indicted for grand larceny in the second degree and pleaded guilty to the crime of petit larceny in satisfaction of the indictment. Prior to acceptance of the plea, an attorney for the hospital's insurer addressed the court and stated that defendant had made restitution in a sum satisfactory to the insurer and had been given a general release in civil litigation concerning the embezzlement. The court then stated: "I have indicated by your attorney and for the record a few moments ago, apparently, you have made restitution to the satisfaction of the parties concerned. Under those circumstances I am going to consider placing you on probation for a period not to exceed three years. If after I read the probation report I find that I am not inclined to go along with the commitment I shall so advise you. You may then, if you wish to do so, withdraw your plea and go to trial, if you so desire." At sentencing, the court declined to sentence defendant to probation because it appeared that he had only made restitution of $10,350, a sum which the court characterized as "a pittance" of the amount embezzled. Although the court stated its intention to impose a one-year term of imprisonment and offered defendant the opportunity to withdraw his plea and stand trial, defendant specifically declined to withdraw his plea. He was then sentenced to a one-year jail term. The modification of the sentence in this case to a three-year term of probation constitutes an instance of unwarranted leniency for a "white collar" crime. The law is clear that even if the sentencing court had made an unconditional promise of probation to defendant, that promise would, "as a matter of law and strong public policy", be conditioned upon its being lawful and appropriate in the light of the subsequent presentence report or information obtained from other reliable sources (see *People v Selikoff,* 35 NY2d 227, 238). In the case at bar, defendant was not entitled to specific performance of the promise of probation, but rather only to an opportunity to withdraw his plea, which he declined. The instant modification allows the defendant to retire to his home in Connecticut, the restoration of which was financed at a cost of some $40,000, without making restitution of the full amount that the available proof shows he stole, and after having served only five days in jail for his crime. In my view, the sentence of imprisonment for one year was totally appropriate under these circumstances.