# (December 10, 1981)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CAROLYN SPECTOR, Appellant. — Judgment, Supreme Court, New York County (Haft, J.), rendered on May 23, 1979, modified, on the law, in the exercise of discretion and in the interest of justice to vacate the sentence and impose a sentence of 2⅓ to 7 years and, as thus modified, affirmed. Present — Murphy, P. J., Kupferman, Sullivan, Carro and Lupiano, JJ. Murphy, P. J., concurs in a memorandum; Sullivan, J., concurs in a separate memorandum in which Carro, J., concurs; Lupiano, J., dissents in a memorandum and would affirm; and Kupferman, J., dissents and would affirm; as follows.

Murphy, P. J. (concurring). Based upon the new information contained in the probation report and the psychiatric evaluation, the court acted within the parameters of the plea agreement by withdrawing its conditionally promised sentence of 2⅓ to 7 years. The evidence indicates that defendant was an alcoholic undergoing treatment at the time of the occurrence. While defendant's addiction to alcohol does not excuse her heinous act, her withdrawal from that toxicant does, to a large extent, explain her action. Her psychiatric evaluation concludes with the following pertinent remarks: "Diagnosis: Alcoholism, Episodic excessive drinking, with passive-aggressive features. Prognosis: Guarded. Therapeutic Recommendations: Defendant does not appear dangerous to herself or to others on the basis of this examination. Hospitalization or incarceration do not appear indicated. It is respectfully recommended that she be placed on probation, with the provision that she continues to attend group therapy sessions, as well as A.A., for her drinking problem." The recommended treatment of probation is clearly too lenient. Likewise, upon the particular facts in this case, the maximum sentence imposed of 14 years is too severe. The defendant will be sufficiently punished and society will be adequately protected with the imposition of a sentence of 2⅓ to 7 years' incarceration. During this period, it is suggested that the defendant receive continuing rehabilitative treatment for her alcoholism. In the exercise of discretion and in the interest of justice, I would modify the judgment accordingly.

Sullivan, J. (concurring). The judgment should be modified by reducing the sentence to an indeterminate term of 2⅓ to 7 years, thereby conforming the sentence to the court's promise at the time of the plea. On January 2, 1979, defendant pleaded guilty to attempted murder in the second degree, a class B felony. In admitting her guilt defendant stated that on March 8, 1978, at about 5:00 P.M., she was waiting on a subway platform with her husband when a woman stepped on her toe, thereby prompting an argument, during the course of which she threatened to push the woman into the path of the next train to pull into the station. True to her word, defendant shoved the woman onto the tracks when she saw the lights of an oncoming train. Just 5 or 10 seconds before the train's arrival, a bystander pulled the victim back onto the platform.[1] Defendant was immediately arrested. The plea was meticulously taken. As to the incident itself, the court posed a series of questions, over 25 in number, obviously designed to elicit in defendant's own words sufficient facts to establish each and every element of the crime. This colloquy followed an off-the-record side bar conference at which the plea bargain subsequently disclosed on the record had obviously been discussed, because immediately after the last of the series of questions relating to the incident the court stated "it is my present intention from what I know about this case and your background, to impose a sentence of two and one-third years as a minimum and seven years a maximum." Continuing, it noted "However, after receiving the probation

---

1. The victim suffered only minor bruises.

report and conference *[sic]* the case more fully with the assistant district attorney and your lawyer, if I find that I am unable to impose this sentence of two and one-third years to seven years, I will permit you to withdraw your plea of guilty and proceed to trial." Defendant noted her acceptance of the conditional promise. On the date set for sentence, six weeks later, the court informed all parties that it found its sentence promise "inappropriate" and offered defendant the opportunity to withdraw her plea. In explaining its change of heart, the court advanced the following reason: "I [believed] at the time of the plea that upon a trial the People would only be able to sustain the count of reckless endangerment for which a seven year sentence as a maximum could be imposed. They might have substantial difficulty with the attempted murder count for which a much longer sentence is automatic. I now believe attempted murder conviction is a likely possibility on trial." The court also indicated additional reasons for withdrawing its promised sentence. "[U]pon reviewing the [presentence] report * * * this defendant did not appear to be particularly remorseful for [her] acts * * * and finally there is no indication that the defendant is suffering presently from any mental disease or defect nor was she suffering from a disease at the tme of the crime." Finally, the court stated, "no substantial justification or excuse for the defendant's actions appear in the probation report." Although noting its study of both the presentence and psychiatric reports, the court did not refer directly to a single statement in either report to document its new interpretation of the case. At defendant's next court appearance, her attorney, protesting the absence of any factors emerging after the plea to justify "changing the terms of the plea", informed the court that defendant did not wish to withdraw her plea. When, after several intervening adjournments, defendant appeared for sentencing on May 16, 1979, she joined a colloquy between the court and her attorney as to the propriety of the court's stated intention not to adhere to the terms of the plea bargain and complained to the court, "I copped out and you will give me a maximum — you promised two and a third to seven. Now, you are going to cop out. * * * I am screwed whether I plead guilty or not guilty." Sensing defendant's agitation, her attorney requested and received a one-week adjournment. On the adjourned date when defendant appeared once again for sentence, her attorney, in arguing for leniency, noted that the court-ordered psychiatric report recommended probation and stressed that defendant had a child at home for whom her husband alone was caring, and that she was under great emotional stress on the day of the incident and would be better served by therapy than a substantial jail sentence. The court responded: "When I originally considered this case I had no idea that the defendant's criminal intent was quite the way it now appears to be to me. She knew of the risk to this victim and deliberately pushed her in front of what appeared to be a moving train. Her excuse for that, is so flimsy as to be non-existent. I had anticipated that there might have been serious mental problems which would have overcome her to some extent. That doesn't appear to be the case." The court also complained that "[defendant] exploded violently against me" when she had appeared for sentence one week earlier. Her attorney immediately disputed this description of defendant's behavior, characterizing her conduct as "an angry speech followed by storming out towards the door, to leave the courtroom back to the pens. This was not an agressive act aimed at your honor, not in the physical way". The court thereupon sentenced defendant to an indeterminate term with a maximum of 14 years. Often, as here, in taking a guilty plea, a trial court, rather than bind itself absolutely, will inform a defendant that a specific sentence will be imposed unless the presentence report, or some other source of new information, indicates the inappropriateness of the promised sentence, in which event the defendant is given the option

of either withdrawing the plea or accepting a lengthier sentence than promised. Such condition, even though never expressed, is implicit in every sentence promise. As the Court of Appeals has noted: "[A]ny sentence 'promise' at the time of plea is, as a matter of law and strong public policy, conditioned upon its being lawful and appropriate in light of the subsequent presentence report or information obtained from other reliable sources. * * * Of course, courts may continue, on the pleading record, to indicate the sentence they expect to impose. The promise must be fulfilled provided there is nothing contained in the presentence report or in later learned facts rendering improvident the sentence promised [citation omitted]. Where a court cannot or will not impose the sentence previously promised it should specify on the record the information contained in the presentence report or any other circumstance relied upon for its changed view [citation omitted]. Thus, arbitrariness or trifling with the legitimate expectations of pleading defendants may be avoided and the matter will be subject to appellate review." *(People v Selikoff,* 35 NY2d 227, 238, 240.) The court here attempted to follow this mandate by stating the newly acquired information which it believed justified its refusal to adhere to the sentence promise: (1) at the time of the plea, it felt the People could only sustain a charge of reckless endangerment, whereas, at sentence, it believed that attempted murder could be proved; (2) defendant's actions appeared to be without justification or excuse and (3) she did not appear to be suffering from any mental disease or defect, or (4) show remorse. None of the reasons is, however, legally sufficient to justify retraction of the promised sentence. We fail to discern any new or additional facts in the presentence report which would bespeak a stronger case of attempted murder than that which was originally indicated. That defendant's actions were intentional, deliberate and without justification was manifest from the outset. At the plea she admitted that, frustrated at her inability to find a job and in the aftermath of an argument, she pushed the complainant onto the subway tracks as she saw the lights of an approaching train — just as she had threatened to do. Nor was the court under any illusion at the time of the plea that defendant was suffering from a mental disease or defect at the time of the incident. Indeed, if the court believed that defendant did suffer from a diminished mental capacity and that such impairment contributed to the offense, it should not have accepted the plea. *(People v Serrano,* 15 NY2d 304.) Before accepting the plea, it was obligated to inquire further to determine whether defendant might have a defense. (Cf. *People v Morales,* 17 AD2d 999.) The suggestion that the court would have accepted a plea to attempted murder even though it did not believe the evidence would sustain such a conviction is incongruous. This is not an instance where a defendant knowingly and willingly pleads guilty, without an express admission of guilt, to avoid the consequences of conviction. (See *North Carolina v Alford,* 400 US 25.) The guilty plea was accepted on the basis of a series of admissions by defendant, the totality of which was sufficient to sustain a conviction of attempted murder. Defendant, of course, did not have an absolute right to have her guilty plea accepted, "[b]ut after its acceptance and full agreement on sentence reached, in the absence of fraud the court had no inherent power to set the plea aside without defendant's consent." *(People v Griffith,* 43 AD2d 20, 24; see *People v Pendelton,* 73 AD2d 857.) The remaining reason offered by the court in justification of its refusal to honor its commitment — defendant's lack of remorse — which, parenthetically, is the only one that finds support in the presentence report ("In discussing the matter, [defendant] did not appear to be particularly remorseful, justifying her actions in terms of her own aggravation"), represents a subjective interpretation by the interviewer of defendant's emotional state, hardly a basis for the imposition of a higher sentence than the one promised. The presentence report made

no recommendation as to sentence, merely noting that "incarceration is mandated."[2] In addition to relating a version of the incident similar to defendant's at the taking of the plea, it noted that defendant, then 31 years old, had begun to drink heavily at an early age and had joined Alcoholics Anonymous shortly before her arrest. According to the report, her husband "has expressed considerable concern and affection" for her. She had five previous arrests, of which three had led to convictions, one for loitering, another for resisting arrest and a third for prostitution. Her last arrest and conviction occurred almost four years before this incident. In recommending probation, the court-appointed psychiatrist concluded that defendant did "not appear dangerous to herself or to others on the basis of [my] examination." In our view, the presentence report did not provide any information adverse to defendant which had not been known at the plea-taking proceeding. Not even the observation that her "almost jolly demeanor masks deep seated anger and frustration" should have altered the original impression of defendant since her latently aggressive personality was painfully evident. In sum, from the picture painted of her by the presentence report, the defendant who presented herself for sentencing was the same malefactor, no better nor worse, as the defendant who had, six weeks earlier, pleaded guilty. If anything, the only new relevant information was favorable — on the basis of his evaluation a court-appointed psychiatrist had found that defendant did not pose a danger to the community. The integrity of the plea bargaining process, indeed of the judicial system itself, demands that courts assiduously adhere to the terms of their commitments. "[A] court, as attorneys who practice before it, has an obligation to honor any commitment made by it, absent extenuating circumstances" *(People v Jacobsohn,* 60 AD2d 607, 609). As the Court of Appeals has had occasion to note "[O]f importance also is the detrimental effect on the criminal justice system that will result should it come to be believed that the State can renege on its plea bargain with impunity notwithstanding defendant's performance." *(People v McConnell,* 49 NY2d 340, 349.) In the absence of changed circumstances warranting a higher sentence, the court's offer to allow defendant the opportunity to withdraw her plea did not relieve it of the obligation to impose the promised sentence. Nor does a sentencing court have complete discretion to disregard a sentence promise just because it states reasons for its actions on the record. If those reasons are legally inadequate upon review, the plea bargain should be enforced. *(Santobello v New York,* 404 US 257; *People v Jones,* 75 AD2d 734; *People v Pendleton, supra,* 73 AD2d 857; *People v Jacobsohn, supra,* 60 AD2d 607; *People v Griffith, supra,* 43 AD2d 20.) Upon review of the record we are unable to ascertain any demonstrably material information available at sentence and which was not known at the time of the plea that would compel a departure from the promised sentence. In such circumstances enforcement of the plea bargain is the appropriate remedy. Accordingly, the judgment, Supreme Court, New York County (Haft, J.), rendered May 23, 1979, should be modified, on the law, to reverse the sentence and to impose a sentence of 2⅓ to 7 years, and, except, as thus modified, affirmed.

Lupiano, J. (dissenting). I would affirm the judgment convicting defendant of attempted murder in the second degree and sentencing her to an indeterminate term of 14 years. While I subscribe to the policy considerations ably set forth by Justice Sullivan respecting the system of plea bargaining as it presently exists, I do not discount the articulable reason given by the sentenc-

---

2. For a conviction of attempted murder in the second degree, a class B felony, incarceration in State prison for an indeterminate term with a maximum of at least six years is mandatory. (Penal Law, § 70.04, subd 3, par [a].)

ing court for departure from the plea bargain, and evidenced in the presentence report, to wit defendant's apparent lack of remorse. Plea bargaining is not an exact science and a fair degree of discretion must be vested in the sentencing court to depart from the agreed upon bargain under appropriate circumstances. While the instant matter represents a close case on the issue of the sentencing court's exercise of discretion, it does not amount to an abuse of discretion in my view. Finally, as a pragmatic consideration, the actual in-jail time faced by defendant, assuming good behavior and reflecting the reality of the parole process, is not that substantially different between the sentence defendant received and the sentence delineated in the plea bargain. The extended supervision entailed by the sentence defendant received will benefit not only defendant, but society as well.