[772 NYS2d 346]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT RUBENDALL, Appellant.

Second Department, February 17, 2004

**APPEARANCES OF COUNSEL**

*Lynn W. L. Fahey*, New York City, for appellant.

*Richard A. Brown, District Attorney,* Kew Gardens (*John M. Castellano* and *Donna Aldea* of counsel), for respondent.

## OPINION OF THE COURT

COZIER, J.

The defendant maintains on this appeal that the Supreme Court, Queens County (Chin-Brandt, J.), was without authority in granting the People's application to vacate his initial plea of guilty over his objection in the absence of fraud. We agree. However, the defendant is not entitled to the benefit of the favorable sentence he was offered at the time of his initial plea. As a result, we place the parties in the position they were prior to the Supreme Court's unauthorized vacatur of the plea, by reinstating the superior court information by which the defendant was charged with attempted robbery in the second degree and pleaded guilty to that charge.

On December 28, 2000, at about 5:20 A.M., the defendant, who was wearing a ski mask, entered the Crossbay News Stand, grabbed Mohammed Saeeb, pointed a handgun at his neck, and demanded money. The defendant then ordered Saeeb and Mohammed Hassan Kumini to lay face down on the floor while he removed an unspecified amount of money from the cash register and placed it in his front jacket pocket.

The defendant was charged with robbery in the second degree (*see* Penal Law § 160.10) under Queens County superior court information No. 4070/00 (hereinafter SCI No. 4070/00). It appears that SCI No. 4070/00 was subsequently amended by a handwritten notation of the word "attempted" to reflect that the defendant was charged with attempted robbery in the second degree (*see* Penal Law §§ 110.00, 160.10). SCI No. 4070/00, as amended, indicated, inter alia, that "[t]he defendant, on or about December 28, 2000, in the County of Queens, attempted to forcibly steal certain property, to wit: a sum of United States Currency from Mohammed Hassan Kumini, and in the course of the commission of the crime or of immediate flight therefrom, displayed what appeared to be a firearm." The record is unclear with respect to the circumstances under which the handwritten notation of "attempted" was placed in SCI No. 4070/00.

On March 13, 2001, the defendant appeared with his counsel, Michael Horn, before Justice Chin-Brandt. Horn informed the court that the defendant waived his right to be prosecuted by grand jury indictment and that he wished to be prosecuted

under SCI No. 4070/00. Horn further advised the court that the defendant wished to plead guilty to attempted robbery in the second degree with the understanding that the sentence would be a "six-month split," pursuant to the prosecutor's offer. After Justice Chin-Brandt advised the defendant of his rights, the defendant represented to the Supreme Court that he wished to plead guilty. In her allocution of the defendant Justice Chin-Brandt posed the following question: "[b]y you pleading guilty do you admit on or about *December 12th of 2000* here in Queens you *attempted* to *steal* certain property, specifically U.S. currency, from *Lamanin Copini (phonetic)* and in the course of committing the crime displayed what appeared to be a firearm?" (Emphasis added.) The defendant answered "yes," and Assistant District Attorney Burstein, the assigned prosecutor, indicated that that plea was acceptable to the People. Justice Chin-Brandt advised the defendant that the promised sentence would be a "six-month split" and adjourned the case to April 2, 2001, for sentencing.

On April 2, 2001, a different prosecutor and a different defense attorney appeared before the Supreme Court for sentencing. At that time, the prosecutor, inter alia, stated that:

> ADA EDELMAN: "I received what's called a status report which really summarizes—which I use to convey certain offers and enter into discussions with counsel during the day and the plea offer at that time was six months split. I conveyed that offer to Counsel Horn, who conveyed it to the defendant and readily accepted it. As a matter of fact, Mr. Horn conveyed that he was somewhat surprised and the defendant readily took the plea. I substantially ascertained either later that day or the day after that the actual offer was seven years and that was an error on the status report.
>
> "*We are making an application to have that plea withdrawn.* I think based on the facts of the case itself, as well as the defendant's prior history, it does not reap the benefit of what might be an egregious error on our part and I don't think that's the form of contract where all parties had the meeting of the minds." (Emphasis added.)

The case was adjourned to April 5, 2001. During the proceedings on that day, Assistant District Attorney Edelman, inter alia, stated:

"What happened is very simple. Unfortunate but simple. We get what is called status reports which I hand [sic] in the courtroom. I use that as a reference to negotiate cases and that, fortunately only that one, over the years was incorrectly stated and transposed from another case to this. That offer is seven years. . . . [A] plea of six month[s] incarceration I suggest to the Court would be an egregious offer, and the defendant should not seek fit to reap the benefit.

"Of course, I apologize to counsel. I apologize to the defendant. He wasn't part of the negotiation other than accepting it, but that's not the People's offer, and I think based on the history of the case, the facts alleged of the case as well as the defendant's past history, I would strongly recommend to the Court that the defendant's motion to maintain this plea be denied."

Horn (the defense counsel) responded by stating, in part:

"When I took—when I came in here for the plea that day I went to [the prosecutor] as is standard prosecute [sic]. I asked what the offer was. He said a six month split. My response was, 'really.' He said yes. Then we stood up in full court in front of everybody and I have the minutes here. We took that plea in open court. . . .

"Now however, an application on behalf of [the] prosecutor—however on application [the] prosecutor [which] the Court may grant the People's motion to vacate where it is obtained by fraud or misrepresents [sic]. Besides that there is no basis to withdraw this plea."

After hearing oral argument, the Supreme Court (Chin-Brandt, J.) granted the People's application to vacate the defendant's plea over his objection and sent the case back to Part AP-6. In reaching its decision, the Supreme Court, inter alia, stated that:

"I think this was just—it's unfortunate but these things happen. I think the People's mistake it seems to me is a *clerical error.* The names were misread and when the DA office realized that they notified the Court and we had the case put on, I don't think

your client is prejudiced because the offer was severe jail time, seven years." (Emphasis added.)

An indictment was subsequently filed on May 24, 2001, charging the defendant with robbery in the second degree, criminal possession of a weapon in the third degree, and criminal possession of stolen property in the fifth degree. On July 3, 2001, the defendant appeared with Horn before the Supreme Court (Griffin, J.), and pleaded guilty to robbery in the second degree, criminal possession of a weapon in the third degree, and criminal possession of stolen property in the fifth degree, with the understanding that he would be sentenced to a term of $3^{1}/_{2}$ years imprisonment with respect to the robbery count. On July 15, 2001, the defendant was sentenced to concurrent terms of imprisonment of $3^{1}/_{2}$ years on the robbery conviction, one to three years on the conviction of criminal possession of a weapon, and one year on the conviction of criminal possession of stolen property, respectively.

It is well settled that in the absence of fraud, a court has no inherent power to set aside a plea of guilty without the defendant's consent (*see Matter of Lockett v Juviler,* 65 NY2d 182, 186-187 [1985], *cert denied* 479 US 832 [1986]; *Matter of Helbrans v Owens,* 205 AD2d 775, 776 [1994]; *Matter of Hoffman v Fisher,* 173 AD2d 826, 827 [1991]; *People v Gamble,* 128 AD2d 724 [1987]). However, a court has the inherent power to correct its own error in accepting a plea or imposing sentence where the error is clear from the record (*see People v Wright,* 56 NY2d 613, 614 [1982]; *People v Minaya,* 54 NY2d 360 [1981], *cert denied* 455 US 1024 [1982]; *People v Cornejo,* 233 AD2d 523, 524 [1996]; *People v Monereau,* 181 AD2d 918, 919 [1992]). For example, in *People v Wright (supra),* the court properly exercised its inherent power to correct its error when the record showed that the judge had misspoken in sentencing the defendant to a concurrent rather than a consecutive sentence. Similarly, in *People v Minaya (supra),* the record established that the court mistakenly sentenced the defendant to three years instead of eight years as agreed at the time of plea.

For the first time on appeal, the People argue that the Supreme Court properly vacated the defendant's initial plea since it was procured by the defendant's fraud and misrepresentation. According to the People, the defendant's initial plea was a nullity and illegal since the defendant allegedly pleaded guilty to charges pending against another individual, which involved an attempted robbery that occurred on another date, in another

place, against a different victim. In particular, the People maintain that while SCI No. 4070/00, then pending against the defendant, charged him with attempting to forcibly steal property from Mohammed Hassan Kumini on December 28, 2000, according to the transcript of the defendant's initial plea allocution, he pleaded guilty to an attempt to forcibly steal property from "Lamanin Copini" on December 12, 2000.

This argument is without merit. The People did not seek to vacate the defendant's initial plea on such ground. Rather, the People represented to the Supreme Court that the defendant's initial plea allocution was acceptable. Thereafter, the People sought to "withdraw" the defendant's initial plea on the basis that the assigned prosecutor mistakenly offered a six-month split sentence. However, the People acknowledged on the record during oral argument that the defendant was not part of the negotiation process other than his acceptance of the offer.

Although the Supreme Court inadvertently misstated the date of the crime during the initial plea allocution, the prosecutor failed to correct this mistake and represented on the record that the plea was acceptable. Further, the reference to "Lamanin Copini" during the initial plea allocution appeared to be a phonetic spelling and an error in the court reporter's transcription of the complainant's name, Mohammed Hassan Kumini.

Here, the Supreme Court did not misstate the promised sentence at the time of the defendant's initial plea. Rather, the People sought to "withdraw" the defendant's initial plea based on their unilateral mistake which arose from miscommunication within their office. The record is devoid of any evidence that the defendant's initial plea was obtained as a result of any fraud or misrepresentation by the defendant. The Supreme Court did not have the authority to vacate the defendant's initial plea over the defendant's objection on the ground that the proposed sentence was different from the one that was allegedly first offered by a different prosecutor.

However, in this case, there was no negotiation among the parties and the Supreme Court regarding the charge to which the People sought to have the defendant plead guilty to, or the proposed sentence. The defendant contends that (1) the Supreme Court lacked the authority to vacate the initial plea under SCI No. 4070/00, and (2) he is entitled to specific performance of the terms of that plea. The defendant is correct, as we have already held, with respect to the former contention, but is incorrect as to the latter.

The defendant maintains that he is entitled to specific performance of his initial plea agreement as to the promised sentence since he entered into that agreement in good faith and absent any fraud or mistake. This contention is without merit.

The Court of Appeals has rejected the argument that contract principles are applicable to plea agreements and that a defendant may compel specific performance of such an agreement (*see People v McConnell*, 49 NY2d 340 [1980]; *People v Selikoff,* 35 NY2d 227 [1974], *cert denied* 419 US 1122 [1975]). Rather, the Court has held that a sentence promise is conditioned, as a matter of law and of strong public policy of rehabilitating offenders, protecting society, and deterring other potential offenders, upon the sentence being lawful and appropriate in light of the subsequent presentence report and any other information obtained from a reliable source (*see People v Hicks,* 98 NY2d 185 [2002]; *People v McConnell, supra; People v Selikoff, supra*). However, if the court cannot or will not impose the sentence promised, the reasons should be stated on the record in order to permit appellate review and avoid arbitrariness or trifling with the legitimate expectations of defendants (*see People v Selikoff, supra* at 240). An exception to the general rule against specific performance of a plea agreement may occur when the defendant has placed himself in a "no-return position"; that is, when a defendant " 'performs other services for the prosecutor as well, services that involve considerable risk or sacrifice' " (*People v McConnell, supra* at 348, quoting *Matter of Chaipis v State Liq. Auth.,* 44 NY2d 57, 65 [1978]; *see People v Curdgel,* 83 NY2d 862 [1994]). In such a case, specific performance of a plea agreement may be required as a matter of "essential fairness," absent compelling reasons requiring a different result (*see e.g. People v Danny G.,* 61 NY2d 169, 175-176 [1984]; *People v McConnell, supra* at 349; *People v Grimaldi,* 200 AD2d 687 [1994]). Here, this exception is not applicable to the defendant's plea allocution (*see People v McConnell, supra* at 347). Thus, if the court will not or cannot impose the sentence promised, and the defendant does not wish to agree to the imposition of a different sentence, he is entitled to no more than the withdrawal of his plea of guilty (*see People v McConnell, supra*).

The cases relied on by the defendant do not compel a different result. For example, *People v Griffith* (43 AD2d 20 [1973]) conflicted with a determination from this department that was affirmed by the Court of Appeals in the seminal case of *People v Selikoff* (*supra*), and does not accurately reflect the current

state of the law as to sentence promises (*id.*). The defendant in *Matter of Crooms v Corriero* (206 AD2d 275 [1994]) was not seeking specific performance of his sentence promise. Indeed, it was expressly noted in *Crooms* that there was "no disagreement among the District Attorney, [the defendant] and [the] Supreme Court as to the sentence to be imposed" and that the matter was before the court "solely because the District Attorney desires that [the defendant] plead guilty to a count of the indictment in addition to that agreed upon in open court" (*id.* at 278). Thus, *Crooms* is inapposite.

Finally, contrary to the People's contention, the defendant's subsequent plea did not constitute a forfeiture of his right to appeal the vacatur of his initial plea. The defendant's subsequent plea could not stand since the initial plea was valid and the Supreme Court had no authority to unilaterally vacate it without the defendant's consent (*see People v Hardin,* 67 AD2d 12, 16 [1979]). Moreover, the defendant entered his subsequent plea of guilty to different charges under a different accusatory instrument, to wit, the indictment rather than the original superior court information (*cf. People v Colon,* 169 AD2d 731 [1991]; *People v Boyce,* 150 AD2d 471 [1989]; *People v Guerrero,* 140 AD2d 456 [1988]).

Consequently, under the circumstances of this case, the Supreme Court erred in unilaterally vacating the defendant's initial plea of guilty over his objection and should have afforded the defendant the option to withdraw that plea and proceed to trial, or allow the plea to stand if the defendant was willing to face a sentence other than the one which was purportedly promised (*see Matter of Hoffman v Fisher, supra; People v Harris,* 118 AD2d 583, 584 [1986], *affd* 69 NY2d 850 [1987]). As such, the judgment is reversed, on the law, the defendant's plea of guilty to robbery in the second degree, criminal possession of a weapon in the third degree, and criminal possession of stolen property in the fifth degree and the sentences imposed thereon are vacated, indictment No. 4070/00 is dismissed, SCI No. 4070/00 and the defendant's plea of guilty to attempted robbery in the second degree are reinstated, and the matter is remitted to the Supreme Court, Queens County, to afford the defendant the opportunity either to withdraw his initial plea of guilty and proceed to trial or allow the plea to stand if the defendant is willing to face the imposition of an enhanced sentence.

RITTER, J.P., LUCIANO and RIVERA, JJ., concur.

Ordered that the judgment is reversed, on the law, the defendant's plea of guilty to robbery in the second degree, crim-

inal possession of a weapon in the third degree, and criminal possession of stolen property in the fifth degree and the sentences imposed thereon are vacated, indictment No. 4070/00 is dismissed, superior court information No. 4070/00 and the defendant's plea of guilty to attempted robbery in the second degree are reinstated, and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent herewith.